J-A16007-14

2014 PA Super 181

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOAN ORIE MELVIN, | : | |
| | : | |
| Appellant | : | No. 844 WDA 2013 |

Appeal from the Judgment of Sentence May 7, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-CR-0009885-2012

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOAN ORIE MELVIN, | : | |
| | : | |
| Appellant | : | No. 1974 WDA 2013 |

Appeal from the Order November 15, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-CR-0009885-2012

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

OPINION BY DONOHUE, J.:                              **FILED AUGUST 21, 2014**

Here we decide two appeals by Appellant, Joan Orie Melvin ("Orie

Melvin"), a former Justice of the Supreme Court of Pennsylvania.  First, at

docket number 844 WDA 2013, Orie Melvin appeals from the judgment of

sentence following her convictions of three counts of theft of services, 18

Pa.C.S.A. § 3926(b), and one count each for conspiracy to commit theft of

services, 18 Pa.C.S.A. § 903(a), misapplication of entrusted property, 18 Pa.C.S.A. § 4113(a), and conspiracy to tamper with or fabricate evidence, 18 Pa.C.S.A. § 903(a). For the reasons that follow, we affirm the judgment of sentence except that we eliminate the condition that the letters of apology to the members of the Pennsylvania judiciary be written on a photograph of Orie Melvin in handcuffs.

Second, at docket number 1974 WDA 2013, Orie Melvin appeals the trial court's *sua sponte* order dated November 15, 2013 staying her criminal sentence in its entirety. On this second appeal, we reverse the trial court's order staying Orie Melvin's criminal sentence and reinstate the sentence set forth in the written sentencing order dated May 7, 2013, as modified by the written order of the trial court on May 14, 2013 with the exception that the condition that the letters of apology to the members of the Pennsylvania Judiciary be written on a photograph of Orie Melvin in handcuffs is eliminated.

In 1990, Orie Melvin was appointed to fill a vacancy on the Court of Common Pleas of Allegheny County, and in 1991 she was elected to serve a full term on that court. In 1997, she was elected as a judge on the Superior Court of Pennsylvania, and she won a retention election for her seat on this Court in 2007. In 2003, Orie Melvin ran, unsuccessfully, for a seat as a Justice of the Supreme Court of Pennsylvania. In 2009, she ran for this position again and won a 10-year term.

On May 18, 2012, the Commonwealth filed a nine-count criminal complaint against Orie Melvin, alleging, *inter alia*, that she illegally used her judicial staff as well as the legislative staff of her sister, former State Senator Jane Clare Orie ("Jane Orie"), in connection with her 2003 and 2009 campaigns for the Supreme Court of Pennsylvania. At a preliminary hearing on July 30-31, 2012, the magisterial district judge dismissed two counts (official oppression and solicitation to tamper with evidence).[1] On August 14, 2012, the Commonwealth filed a seven-count information charging Orie Melvin with three counts of theft of services (Counts 1-3), conspiracy to commit theft of services (Count 4), misapplication of entrusted property (Count 5), official oppression (Count 6), and conspiracy to tamper with or fabricate evidence (Count 7). Information, 8/14/2012, at 1-3.

A jury trial began on January 24, 2013, and on February 21, 2013, the jury returned guilty verdicts on all counts except for Count 6, on which it advised the trial court that it could not reach a unanimous verdict. On May 7, 2013, the trial court sentenced Orie Melvin on Count 1 to county intermediate punishment (house arrest) for a maximum period of three

---

[1] The magisterial district judge dismissed the count for official oppression relating to Jamie Pavlot ("Pavlot"), Jane Orie's former Chief of Staff, but held over for trial the count (Count 6) for official oppression relating to Lisa Sasinoski ("Sasinoski"), Orie Melvin's former Chief Law Clerk. In addition, the magisterial district judge dismissed the count for soliciting Pavlot to tamper with evidence, but held over for trial the count (Count 7) for conspiracy with Pavlot and Jane Orie to tamper with evidence.

years, with the following conditions: that she be approved for release to attend church services, that she volunteer in a soup kitchen three times per week, pay a $15,000 fine, and comply with DNA registration. The trial court imposed identical sentences with respect to Counts 3 and 4, and while not expressly stating that the sentences for Counts 1, 3, and 4 were to run concurrently, so indicated by ruling that all three would commence at the same time (the date of sentencing, May 7, 2013). With respect to Counts 5 and 7, the trial court imposed terms of two years of probation and $5,000 fines. The trial court imposed no penalty on the conviction under Count 2.

The trial court incorporated all of these terms in a written sentencing order dated May 7, 2013. Order of Sentence, 5/7/2013, at 1-3. Not set forth in this written sentencing order, but as described in the transcript of the May 7, 2013 sentencing hearing, the trial court purported to impose additional conditions on Orie Melvin, including that she was removed from the Supreme Court of Pennsylvania and could not use the term "Justice" while on house arrest and probation. N.T., 5/7/2013, at 63-64. The trial court also instructed Orie Melvin that she would be required to write letters of apology to everyone on her judicial staff that did illegal work for her benefit at her behest. *Id.* at 63. Finally, the trial court directed Orie Melvin to pose in handcuffs for a photograph taken by the court photographer, on the front of which she would be compelled to write an apology, to be sent to every common pleas court and intermediate appellate court judge in

- 4 -

Pennsylvania as well as the Justices of the Supreme Court of Pennsylvania. *Id.* at 64-65.

At a subsequent sentencing hearing on May 14, 2013, the trial court modified certain terms of Orie Melvin's sentence. Specifically, the trial court modified the sentences for Counts 1, 3, and 4 to provide that each count would carry a one-year term of county intermediate punishment plus a $15,000 fine, and that these three sentences would run consecutively to each other. N.T., 5/14/2013, at 3. With respect to the sentences on Counts 5 and 7, the trial court clarified that the two-year terms of probation for these counts would run concurrently with each other, and consecutively to the sentences on Counts 1, 3, and 4. *Id.* These modifications to Orie Melvin's sentence, along with other terms of the sentence announced by the trial court on May 7, 2013 (including the writing of both types of apology letters), were subsequently set forth first in a written Amended Order of Sentence and later in a written Corrected Amended Order of Sentence.[2]

---

[2] Inexplicably, all three sentencing orders are dated May 7, 2013, even though the Amended Order of Sentence and the Corrected Amended Order of Sentence both contain terms that were not announced by the trial court until May 14, 2013. A notation at the bottom right-hand corner of these two orders reflects that they were printed on May 15, 2013 and May 17, 2013, respectively. In addition, all three sentencing orders were filed at the same docket entry ("#85 05/07/2013 Order – Sentence/Penalty Imposed"). Orie Melvin's Reproduced Record contains only the original Order of Sentence (R. 7714a-15a), but does not contain either Amended Order of Sentence or the Corrected Amended Order of Sentence. The Commonwealth did not attempt to supplement the reproduced record to add these two sentencing orders.

On May 20, 2013, Orie Melvin filed a notice of appeal from the judgment of sentence at docket number 844 WDA 2013.

Orie Melvin did not write or send letters of apology as demanded by the trial court at the sentencing hearing on May 7, 2013, and in response, the trial court scheduled a violation of probation hearing for October 15, 2013. On September 27, 2013, Orie Melvin applied to this Court for a stay of the requirement that she write apology letters because to do so would violate her constitutional rights against self-incrimination. By Opinion dated November 6, 2013, this Court granted the requested stay, indicating that it would remain in effect "until such time as her direct appeal in this Court has been decided." *Commonwealth v. Melvin*, 79 A.3d 1195, 1202 (Pa. Super. 2013). In its Opinion granting the stay, this Court further indicated that it took no position regarding the merits of any of the issues raised by Orie Melvin on appeal. *Id.* Finally, this Court rejected the Commonwealth's request to remand the case to the trial court immediately for resentencing because a stay would disrupt the trial court's sentencing scheme. *Id.* at 1204-05.

Despite this Court's express finding that "the grant of the Application for Stay does not disrupt the trial court's sentencing scheme," on November 14, 2013 the trial court, on its own initiative, convened a "hearing on adjustments" to Orie Melvin's sentence, at which it concluded that this Court's stay of the apology letters did disrupt its sentencing scheme:

Now, my problem now is there seems to be, and I may well be overly sensitive about this, but the opinion I have here from the Superior Court, there seems to be little question as to whether or not this is a sentencing scheme. This is a sentencing scheme. There were several parts to the sentence. Your client, [Orie Melvin], was placed on house arrest for a certain period of time. She was ordered to pay certain fines. And she was ordered to do certain things while she was part of house arrest.

Apparently, she likes all of that except one of the things I asked her to do. This is Column A, this isn't Column B, Mr. Casey. This is one sentence. It's all the same. And because of that, and because, to be honest with you – I read the opinion by the Superior Court and it was thought provoking. I would hate to think that the Superior Court – well, not hate to think. Well, yeah. If the Superior Court tells me that it's a violation of her Fifth Amendment, it may well be. That would ruin the sentencing scheme. And the thought of your client serving house arrest and going to the soup kitchen and doing everything I told her to do, on a sentence which just was invalid, is not just.

So what I'm going to do today is I'm going to grant the supersedeas of the whole sentence, tell the Probation Department to cut off the bracelet and take the equipment out of the house. So that everybody understands this is one sentence.

N.T., 11/14/2013, at 4-5. On November 15, 2013, over Orie Melvin's objection that the trial court lacked jurisdiction to do so, the trial court issued an order staying her sentence in its entirety.

On December 13, 2013, Orie Melvin filed a notice of appeal from the trial court's November 15, 2013 order at docket number 1974 WDA 2013.

- 7 -

In the appeal at docket number 844 WDA 2013, Orie Melvin raises fifteen issues for our consideration and determination:

I.   Whether the criminal charges against Orie Melvin are unconstitutional because they infringe upon the Judiciary's exclusive power to supervise the courts under Article 5, Section 10 of the Pennsylvania Constitution?

II.   Whether it violated due process to base criminal charges on alleged violations of an internal court rule governing conduct by court employees?

III.   Whether the warrant authorizing the seizure of Orie Melvin's entire private email account was unconstitutionally overbroad in violation of the Fourth Amendment and Article 1, Section 8 of the Pennsylvania Constitution?

IV.   Whether it was error to decline to appoint an out-of-county judge to preside over this matter involving Orie Melvin who is a former member of the Allegheny County bench and where a key prosecution witness is the wife of a sitting Allegheny County judge?

V.   Whether the extension of the statue [*sic*] of limitations for 'public officers or employees' in 42 Pa.C.S.A. § 5552(c) applies to 'Judicial officers' like Orie Melvin?

VI.   Whether the criminal charges against Orie Melvin should have been dismissed with prejudice as a sanction for the prosecutor's knowing introduction of false evidence and subornation of perjury?

VII.   Whether the case against Orie Melvin was properly joined with the cases against her sister, Janine Orie, where the charges are factually inconsistent and each faces charges not filed against the other?

VIII. Whether Orie Melvin had the right to have her expert examine original electronic evidence seized by the District Attorney from the office of former State Senator Jane Orie?

IX. Whether Orie Melvin had the right to have her expert examine original electronic evidence in the possession of the Superior Court which was searched at the request of the District Attorney?

X. Whether Orie Melvin's request for *habeas corpus* relief should have been granted as a result of the Commonwealth's failure to make out a *prima facie* case on the theft of services, misapplication of government property and conspiracy charges at the preliminary hearing?

XI. Whether the trial court erred in excluding relevant evidence relating to the productivity of Orie Melvin's judicial chambers as a means of negating the theft or diversion element of the theft of services charges?

XII. Whether the trial court deprived Orie Melvin of a fair trial by offering personal opinions and improperly commenting on the evidence in front of the jury?

XIII. Whether the trial court erred in concluding that the evidence at trial was sufficient to support a conviction for theft of services, misapplication of government property and conspiracy?

XIV. Whether it was error for the trial court to instruct the jury on the issue of accomplice liability after the jury started deliberations?

XV. Whether the trial court erred constitutionally, legally and procedurally in attempting to require Orie Melvin to write letters of apology as part of her criminal sentence while she continues to maintain her innocence?

Orie Melvin's Brief at 5-8.

In the appeal at docket number 1974 WDA 2013, Orie Melvin raises the following two issues for our review:

I.  Whether the trial court lacked jurisdiction and authority to *sua sponte* suspend Orie Melvin's entire sentence while all conditions of county intermediate punishment were satisfied and while Orie Melvin's direct appeal was pending in this Court?

II.  Whether the trial court violated Orie Melvin's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Pennsylvania Constitution by *sua sponte* staying her criminal sentence after jeopardy attached?

Orie Melvin's Brief at 2-3.

## I. TRIAL AND SENTENCING CLAIMS

## A. The Charges and Separation of Powers Doctrine

For her first two issues on appeal at docket number 844 WDA 2013, Orie Melvin contends that the trial court erred in not dismissing the charges against her because they amounted to nothing more than an unconstitutional attempt to criminalize non-criminal, court-imposed restrictions on the political activity of judicial employees. According to Orie Melvin, the power to discipline members of the judiciary is the exclusive province of the Supreme Court of Pennsylvania, and that as a result, her convictions for theft of services, conspiracy to commit theft of services, and

misapplication of entrusted property must be dismissed.[3] Orie Melvin further argues that because the Supreme Court's rule against political activity by court employees does not specify any criminal sanctions for its violation, and because no criminal statute prohibits political conduct by court employees, she had no notice that political activity by members of her staff could result in criminal prosecution.

The notion of the inherent power of the judiciary is implicit in the doctrine of separation of powers. The separation of powers doctrine provides that "the executive, the legislature and the judiciary are independent, co-equal branches of government." *Beckert v. Warren*, 439 A.2d 638, 642 (Pa. 1981). The dividing lines among the three branches "are sometimes indistinct and are probably incapable of any precise definition." *Stander v. Kelly*, 250 A.2d 474, 482 (Pa. 1969) (plurality). "Under the principle of separation of the powers of government, ... no branch should exercise the functions exclusively committed to another branch." *Sweeney v. Tucker*, 375 A.2d 698, 706 (Pa. 1977).

The Supreme Court's authority to regulate the courts and the members of the judiciary is set forth in Article V, Section 10 of the Pennsylvania Constitution:

---

[3] In this regard, Orie Melvin makes no mention of her conviction of conspiracy to tamper with or fabricate evidence (Count 7), and thus presumably does not contend that this conviction should be dismissed on this basis.

(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate.

\* \* \*

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including … the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

PA. CONST. art. V, § 10.

Pursuant to the authority conferred by these constitutional provisions, the Supreme Court established the Code of Judicial Conduct to regulate the activity of judges, and also issued an order dated November 24, 1998 prohibiting political activity by court employees (hereinafter, the "1998 Supreme Court Order"). Based upon these enactments, Orie Melvin contends that the criminal charges against her infringed upon the Supreme Court's exclusive power to regulate the courts of this Commonwealth. Orie

Melvin's Brief at 17-18.  In support of this argument, Orie Melvin directs our attention to three Supreme Court decisions.

In **Commonwealth v. Stern**, 701 A.2d 568 (Pa. 1997), the Supreme Court affirmed a trial court's order declaring unconstitutional a statute prohibiting the payment by lawyers of referral fees to non-lawyers.  **Id.** at 569.  The Supreme Court had already adopted a provision in the Rules of Professional Conduct and the Rules of Disciplinary Enforcement prohibiting lawyers from paying referral fees to non-lawyers, and thus the Supreme Court ruled that the statute passed by the Pennsylvania Legislature infringed upon its exclusive authority to regulate the conduct of attorneys practicing in the Commonwealth.  **Id.** at 573.

Similarly, in **In re Dobson**, 534 A.2d 460 (Pa. 1987), the Supreme Court rejected petitions for relief by court-appointed employees from a Supreme Court rule prohibiting said employees from engaging in partisan political activities.  **Id.** at 461.  Although the Supreme Court had ruled that the election of the two petitioners to positions as school board directors constituted partisan political activity in violation of its rule, the petitioners contended that they were entitled to relief because amendments to the Pennsylvania Election Code permitted candidates for school board directorships to run on multiple political tickets (essentially designating school board directorships to be **nonpartisan** positions).  Based upon its exclusive constitutional supervisory power over the judiciary, including its

employees, the Supreme Court refused to grant the requested relief, stating that "it is for this Court, not the legislature, to determine what amounts to prohibited political activity by judicial employees." *Id.* at 464.

Finally, in *Kremer v. State Ethics Commission*, 469 A.2d 593 (Pa. 1983), the Supreme Court found unconstitutional as applied to judges the financial disclosure requirements in the state's Ethics Act applicable to candidates running for office. *Id.* at 594. The Supreme Court ruled that the Code of Judicial Conduct applicable to judges set forth detailed provisions specifically designed to prevent conflicts of interest (financial and otherwise), and that these provisions advanced the same interests sought to be preserved through enforcement of the Ethics Act. *Id.* at 595-96. The Supreme Court thus determined that application of the provisions of the Ethics Act was unconstitutional as applied to judges, as the conduct of judges running for office "must be accomplished through rules promulgated by this Court and not by legislative enactment." *Id.* at 596.

Orie Melvin argues that *Stern*, *Dobson*, and *Kremer* compel the conclusion that in her case "the District Attorney is seeking to criminalize conduct that is already the subject of regulation by the Supreme Court." Orie Melvin's Brief at 22. We disagree. In those three cases, the Supreme Court had adopted rules regulating the specific conduct of attorneys and judges, thus establishing in each instance the Supreme Court's intention to exercise its authority to regulate the conduct at issue. More importantly, in

each of those cases, the Legislature attempted to regulate precisely the same conduct covered by the Supreme Court rules. That symmetry does not exist in this case. While the Supreme Court has adopted a rule prohibiting political activity by court employees, Orie Melvin was not criminally prosecuted for using her judicial staff to advance her political aspirations.[4] None of the crimes for which she was prosecuted or convicted specifically proscribes political activity.[5] Instead she was prosecuted for the

---

[4] We note that in its charge to the jury, the trial court instructed the jury that Orie Melvin was not being prosecuted for violation of the court rule against political activity:

> You have heard testimony about the Supreme Court Order dated November 24, 1998, prohibiting certain criminal activity by court employees. It is in evidence as [Orie Melvin's] Exhibit Q. This Order is a work rule that applies to court employees. It is not a criminal law. A violation of a work rule is not a crime. You are instructed you may not base your verdict of guilt or innocence in any way on any alleged violation of a court rule.

N.T., 2/15/2013, at 2805-06.

The 1998 Supreme Court Order was irrelevant to the charges against Orie Melvin. In the absence of any such order, it remained a violation of the theft of services statute, 18 Pa.C.S.A. § 3926(b), to use Commonwealth paid employees for activities inuring to her personal benefit.

Because we agree that Orie Melvin was not convicted for violating the Supreme Court's rule against political activity, we likewise conclude that her convictions are not unconstitutional for lack of notice of potential criminal sanctions.

[5] Section (b) of 18 Pa.C.S.A. § 3926, entitled "Theft of services," provides as follows: "Diversion of services -- A person is guilty of theft if, having

- 15 -

use, or rather the misuse, of her judicial staff in violation of criminal statutes prohibiting the diversion of services belonging to the Commonwealth to her own personal benefit. The political nature of the conduct did not serve as the basis of the criminal conviction. Any conduct by her judicial staff that inured to Orie Melvin's personal benefit constituted a diversion of services from the Commonwealth, whether or not said conduct violated the 1998 Supreme Court Order against political activity. In sum, Orie Melvin's convictions were based on her theft of services by using her judicial staff and her sister's senatorial staff, all of whom were paid with

---

control over the disposition of services of others to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto." 18 Pa.C.S.A. § 3926(b).

Section (a) of 18 Pa.C.S.A. § 903, entitled "Criminal conspiracy," provides that a person "is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a).

Section (a) of 18 Pa.C.S.A. § 4113, entitled "Misapplication of entrusted property of government or financial institutions," states that "[a] person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted." 18 Pa.C.S.A. § 4113(a).

taxpayer dollars to advance her campaign for a seat on the Pennsylvania Supreme Court.[6]

## B.  The Search Warrant For Personal Emails

For her third issue on appeal, Orie Melvin argues that a warrant authorizing the seizure of her personal emails at oriemelvin@yahoo.com and judgeoriemelvin4supreme@yahoo.com was overbroad.[7]    For the

---

[6]  In addition to the 1998 Supreme Court Order, Orie Melvin likewise argues that the adoption of the Code of Judicial Conduct evidences the Supreme Court's exclusive power to regulate judges.  Appellant's Brief at 17.  Since Orie Melvin makes only an amorphous, non-particularized reference to the Code of Judicial Conduct, we note generally the following to highlight the faulty predicate for her analysis.  Orie Melvin was charged with crimes that took place during her 2003 and 2009 campaigns for the seat of a justice of the Pennsylvania Supreme Court.  During these respective campaigns, Orie Melvin was a judge of the Superior Court of Pennsylvania.  In 2003 and 2009, Orie Melvin (and all judges and justices in this Commonwealth) were bound by the Code of Judicial Conduct.  **Matter of Chiovero**, 570 A.2d 57, 60 (Pa. 1990) (the Code of Judicial Conduct imposes standards of conduct upon the judiciary).  The Code of Judicial Conduct during both of these time periods was essentially unchanged since, although it was amended in 2005, this amendment only modified various references to ensure that they were gender neutral.  35 Pa. Bull. 6647 (Dec. 10, 2005).

Both the pre-2005 and post-2005 versions of the Code contain seven "canons."  Canon 2A sets forth the directive from the Pennsylvania Supreme Court that "judges should respect and comply with the law… ."  Thus, under Orie Melvin's theory, no judge could be prosecuted for the violation of any criminal statute.  The absurdity of this hypothesis is self-evident.  Moreover, Orie Melvin was not prosecuted for theft of services or any other crime arising from her **direct** campaign activities.  Canon 7 articulates the standards applicable to jurist candidates.  Given the crimes charged, Canon 7 has no relevance to Orie Melvin's argument.

[7]  The January 5, 2010 warrant sought "[a]ll stored communications and other files reflecting communications to  or from user account/user names oriemelvin@yahoo.com,    judgeoriemelvin4supreme@yahoo.com    AND

reasons set forth herein, we conclude that the warrant in question was overbroad, but that the failure to suppress the contents of the email account at trial was harmless error.

In its Rule 1925(a) opinion, the trial court addressed this issue as follows:

> This issue was not presented to this Court. Furthermore, this issue was addressed by the Honorable Jeffrey A. Manning in his Memorandum Opinion Re: Suppression in Commonwealth v. Jane C. Orie and Janine Orie at CC201010285, CC2010010286. This Court adopts that analysis.

Trial Court Opinion, 9/12/2013, at 8.

We conclude that the issue was in fact presented to the trial court and the trial court's adoption of Judge Manning's analysis was error because Judge Manning's analysis and ruling were erroneous. In the prior case involving Jane Orie and Janine Orie, Jane Orie challenged as overbroad a warrant seeking, *inter alia*, "all stored communications and other files … between August 1, 2009 and the present, including all documents, images, recordings, spreadsheets or any other data stored in digital format." **Commonwealth v. Orie**, 88 A.3d 983, 1008 (Pa. Super. 2014). Judge Manning ruled that "the search of the AOL account JaneOrie@aol.com (Com Ex. 10) was supported by sufficient probable cause and was not overbroad

---

orieonthemove@yahoo.com between August 1, 2009 and the present." Search Warrant Continuation Pages, 1/5/2010, at 1. On appeal, Orie Melvin does not contest the search or seizure of emails from the judgeoriemelvin4supreme@yahoo.com account.

or general." ***Commonwealth v. Jane C. Orie and Janine Orie***, CP-02-CR-0010285-86, at 26 (Court of Common Pleas of Allegheny County, February 4, 2011) (unpublished memorandum). Judge Manning further ruled that the warrant "authorized that the content of the e-mails be searched for anything that contained information relevant to the crimes being investigated," and thus "cannot be considered to be overly broad." ***Id.*** at 26-27.

On appeal, however, this Court concluded that the warrant was overbroad. In so doing, we first set forth the applicable law in this area:

> Article I, Section 8 of the Pennsylvania Constitution provides, in pertinent part: '[N]o warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause....' 21 PA. CONST. Art. I § 8. This Court has explained:
>
>> It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched.... The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general 'rummaging' banned by the [F]ourth [A]mendment. A warrant unconstitutional for its

overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. ... An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

\* \* \*

The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized 'as nearly as may be....' The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible.... Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.

**_Commonwealth v. Rivera_**, 816 A.2d 282, 290–91 (Pa. Super. 2003) (citations omitted), _appeal denied_, 828 A.2d 350 (Pa. 2003). Because the particularity requirement in Article I, Section 8 is more stringent than in the Fourth Amendment, if

> the warrant is satisfactory under the Pennsylvania Constitution it will also be satisfactory under the federal Constitution.
>
> Furthermore, the Pennsylvania Supreme Court has instructed that search warrants should 'be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice.' ***Commonwealth v. Rega***, 593 Pa. 659, 933 A.2d 997, 1012 (2007) (citation omitted), *cert. denied*, 552 U.S. 1316 (2008).

***Orie***, 88 A.3d at 1002-03.

We then concluded that the warrant for Jane Orie's email account was overbroad because while the supporting affidavit provided probable cause that evidence of criminal activity could be found in emails in the account, it did not justify a search of every email therein, including those with no relation to criminal activity. ***Id.*** at 1008-09. Because the warrant permitted the seizure of every email in the account without any attempt to distinguish the potentially relevant emails from those unrelated to the investigation, it permitted a general search and seizure that was unconstitutionally overbroad. ***Id.***

The analysis in the ***Orie*** case did not, however, end there. In ***Orie***, we declined to reverse Judge Manning's denial of the suppression motion based upon the "unique facts" presented. ***Id.*** at 1008. In particular, the evidence there showed that while law enforcement had seized Jane Orie's

entire email account, it did not conduct a search of its contents until after obtaining a second warrant that provided the particularity that the first warrant had lacked. *Id.* at 1009. The evidence further showed that law enforcement had conducted this search in accordance with the specific parameters in the second warrant. *Id.* at 1007. While noting that two warrants are neither required nor preferred with respect to such searches and seizures, we concluded that under the "unique facts" presented, the search of Jane Orie's email account passed constitutional muster. *Id.* at 1008 n.42.

No such "unique facts" exist with respect to the warrant for Orie Melvin's email accounts. To the contrary, although the Commonwealth did subsequently obtain a second warrant that provided the specificity lacking in the first warrant, the certified record reflects that the Commonwealth began its review of Orie Melvin's emails obtained pursuant to the first warrant **before** it obtained the second warrant. In the affidavit of probable cause in support of the second warrant, the affiant (Detective Lyle M. Graber of the Allegheny County Office of the District Attorney) explained that when he was reviewing the documents received from Yahoo in response to the first warrant, he noticed a number of emails with subject lines relating to Orie Melvin's campaign, and that upon further inspection of these emails he came across the name of Matthew Haverstick, a lawyer for the Senate Republican Caucus. Affidavit of Probable Cause, 1/27/2010, at

12. As a result, he stopped further review of the emails and sought the second warrant, so that the documents could be reviewed by the Special Master for privilege issues before distribution to the parties.[8]

Pursuant to our analysis in **Orie**, therefore, we must conclude that the warrant authorizing the seizure of Orie Melvin's personal emails at oriemelvin@yahoo.com and judgeoriemelvin4supreme@yahoo.com was overbroad. Unfortunately, however, while Orie Melvin contends that her convictions should be reversed and she should be granted a new trial, Orie Melvin's Brief at 35, she has not offered this Court any legal basis for granting such relief. Similarly, the Commonwealth does not attempt to address the proper remedy in this case for the trial court's failure to suppress the emails obtained pursuant to the warrant in question.

"An appellate court may affirm a judgment or verdict for any reason appearing of record." **Commonwealth v. Parker**, 919 A.2d 943, 948 (Pa. 2007). In **Commonwealth v. Thornton**, 431 A.2d 248 (Pa. 1981), our Supreme Court explained as follows:

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that '[a] defendant is entitled to a fair trial but not a perfect one.'

---

[8] **See infra** at page 49 for a more detailed discussion of the appointment of the Special Master.

*Id.* at 251 (1981). We may affirm a judgment based on harmless error *sua sponte*, even if the parties did not raise the argument. ***Commonwealth v. Allshouse***, 36 A.3d 163, 182, 182 n.21 (Pa. 2012), *cert. denied*, 133 S. Ct. 2336 (U.S. 2013).

An error involving state or federal constitutional law "can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." ***Commonwealth v. Story***, 383 A.2d 155, 162 (Pa. 1978). The analysis is closely tied to the facts of the case and requires an examination of the entire record. *Id.* at 166 n.24; ***Commonwealth v. Whiting***, 517 A.2d 1327, 1333 (Pa. Super. 1986), *appeal denied*, 529 A.2d 1080 (Pa. 1987).

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hutchinson***, 811 A.2d 556, 561 (Pa. 2002) (quoting ***Commonwealth v. Robinson***, 721 A.2d 344, 350 (Pa. 1999)), *cert. denied*, 540 U.S. 858 (2003). Based upon our review of the entire certified record on appeal, the trial court's failure to suppress the contents of Orie Melvin's email account was harmless error.

At trial, the Commonwealth introduced 10 emails into evidence from Orie Melvin's email account obtained pursuant to the overbroad warrant.[9] Six of these emails[10] were to or from Molly Creenan ("Creenan"), a member of Orie Melvin's judicial staff from January 1998 through December 2009. N.T., 2/4/2013, at 1367. While Creenan's tenure on Orie Melvin's judicial staff spanned both the 2003 and 2009 political campaigns, given the scope of the warrant, the emails at issue here relate only to the 2009 campaign.[11] As a result, these six emails did not prejudice Orie Melvin, or the prejudice was *de minimis,* in large part because Creenan testified that she refused to perform any political activities during the 2009 campaign. In particular, Creenan testified that she reluctantly performed various political activities during Orie Melvin's 2003 campaign, but this changed on Election Day in November 2003 when she refused to go to a poll site as directed by Janine

---

[9] In her Reply Brief, Orie Melvin initially identified 21 such emails. Orie Melvin's Reply Brief at 12. A review of the certified record, however, demonstrates that while the Commonwealth marked 21 emails for identification, it only introduced 10 of them into evidence. At oral argument on May 20, 2014, this Court asked counsel for Orie Melvin to provide a supplemental submission identifying all emails obtained pursuant to the warrant at issue that were introduced into evidence at trial, at which time counsel for Orie Melvin identified the 10 emails we discuss herein.

[10] Exhibit 34, Tabs 9, 11, 13, 14, 25, and 26.

[11] As noted hereinabove, **see supra** footnote 7, the warrant sought only emails for the time period from August 1, 2009 to January 5, 2010, and thus the documents produced in response related only to the 2009 political campaign.

Orie.[12]  *Id.* at 1374.  When Creenan learned in December 2008 that Orie

Melvin intended to run again in the 2009 election, she testified that she

went to Orie Melvin and informed her that what she had done in 2003 "can't

happen in 2009" and made clear to Orie Melvin that she would no longer

violate the 1998 Supreme Court Order prohibiting judicial employees from

participating in political activity.  *Id.* at 1384-86.  As a result, when asked

at trial about the six emails in question, Creenan testified that she had no

specific information about the events at issue or had not performed the

political tasks requested of her.  *Id.* at 1414-30.

We likewise conclude that another email[13] was not prejudicial or the

prejudice was *de minimis*.  In this email, Audrey Denise Mackie (then using

her maiden name Rasmussen), a member of Jane Orie's legislative staff,

merely provided Janine Orie (at Orie Melvin's request) with the telephone

number of someone who had expressed an interest in holding a fundraiser

for Orie Melvin.  N.T., 1/31/2013, at 824.

The three remaining emails introduced into evidence were cumulative

of other evidence already introduced at trial.  In an email dated September

28, 2009 to John Degener ("Degener"), who served as a member of Orie

---

[12]  According to Creenan, when she refused to go to a poll site, she was informed that she would have to go into the judicial office to answer the phones, even though Election Day was a paid holiday for state workers.  *Id.* at 1374-76.

[13]  Exhibit 28, Tab 16.

Melvin's judicial staff from January 1998 through 2009, including as her Chief Law Clerk from 2004 through 2009, Orie Melvin asked Degener a question about summaries of certain pro-business decisions she had written or joined.[14] Degener testified only that he had received this email from Orie Melvin. N.T., 2/5/2013, at 1520. To the extent that this email reflected that Degener assisted Orie Melvin in the 2009 political campaign by preparing summaries of her prior judicial decisions, this evidence was merely cumulative of Degener's prior testimony that he performed various other political tasks for Orie Melvin's 2009 campaign, including (without reference to this particular email in question) the preparation of various summaries of her judicial decisions. *Id.* at 1499.

The final two emails at issue were to or from Pavlot. In an email dated August 6, 2009 (Exhibit 14, Tab 9), Pavlot forwarded to Orie Melvin another email concerning the taking of a family photograph and video that were subsequently used in campaign literature. N.T., 1/28/2013, at 229. In an email chain in September 2009 relating to a "gun bash" held by an organization with ties to the National Rifle Association (Exhibit 14, Tab 17), Pavlot suggested to Orie Melvin that 500 "poll cards" relating to her candidacy could be distributed to attendees, and Orie Melvin responded by inquiring whether Josh Dott ("Dott"), a junior member of Jane Orie's legislative staff, could attend the event to assist her in doing so. *Id.* at

---

[14] Exhibit 35, Tab 5.

246-48.  These two emails, however, are merely cumulative of extensive testimony by Pavlot regarding a wide range of political activities she performed for the benefit of Orie Melvin's 2009 political campaign, *id.* at 207-362, including providing assistance to Orie Melvin at various other campaign events, *e.g.*, *id.* at 212, 216, 263, solicitation at fundraisers, *id.* at 238, 258-60, 268, obtaining endorsements from influential political organizations, *id.* at 253, distributing poll cards, *id.* at 256, filming campaign commercials, *id.* at 228, and sending Dott and other legislative staff members to provide assistance at these activities, *id.* at 260, 267.

For these reasons, we conclude that the trial court's failure to suppress the 10 emails seized pursuant to the warrant for Orie Melvin's email accounts and their use at trial by the Commonwealth was harmless error, either because the emails were not prejudicial to Orie Melvin or the prejudice was *de minimis*, or because they were cumulative of other properly admitted evidence.  Moreover, to the extent that these emails tend to prove that Orie Melvin diverted the services of members of her judicial staff and Jane Orie's legislative staff for the benefit of her 2009 political campaign, we note that the Commonwealth introduced into evidence an overwhelming quantum of other uncontradicted evidence, from numerous other witnesses and a large volume of other exhibits unrelated to the 10 emails in question, that likewise demonstrated Orie Melvin's diversion of services.  Thus, the prejudicial effect of these 10 emails is insignificant by

comparison and in our view could not have contributed to the verdict. As a result, no relief is due on Orie Melvin's third issue on appeal.

## C. Recusal of the Entire Allegheny County Bench

For her fourth issue on appeal, Orie Melvin contends that the trial court erred in denying her motion for recusal of the members of the Allegheny County bench in favor of an out-of-county trial judge. In a ruling at the time of the preliminary hearing, Orie Melvin moved for the recusal of all members of the Allegheny County bench and requested the assignment of a trial judge from another judicial district to preside over all future proceedings pursuant to Pennsylvania Rule of Judicial Administration 701C. The trial court denied the motion, stating that it would be improper to recuse all of the members of the Allegheny County bench, as the decision regarding whether or not a jurist should recuse is a decision that only the individual jurist can make. Trial Court Opinion, 6/27/2012, at 4. Instead, the trial court indicated that a request for recusal of the trial judge assigned to Orie Melvin's case should be directed to that jurist. *Id.* at 5.

On appeal, Orie Melvin takes issue with the trial court's contention that it is improper to recuse all members of a particular bench, citing to ***Commonwealth ex rel. Armor v. Armor***, 398 A.2d 173 (Pa. Super. 1978) (*en banc*). In ***Armor***, an *en banc* panel of this Court ruled that in a case where a member of the Montgomery County bench was the spouse of a party to a child support matter, no member of the Montgomery County

bench could preside over the case.  *Id.* at 356.  Specifically, this Court ruled that although the record contained no evidence of any bias, prejudice or unfairness on the part of any member of the local bench, "it would be contrary to the appearance of integrity and independence of the judiciary" and would "not promote confidence in the integrity and impartiality of the judiciary" to allow a fellow member of the Montgomery County bar to preside over the case.  *Id*. at 356-57.

Orie Melvin argues the same reasoning should apply in this case, since she is herself a former member of the Allegheny County bench and because an important witness in her case, her former Chief Law Clerk, Sasinoski, is the wife of a member of the Allegheny County bench (the Honorable Kevin G. Sasinoski).  The trial court determined, however, that Orie Melvin had not demonstrated the sort of direct conflict that clouded the appearance of impartiality and independence in *Armor*.  Trial Court Opinion, 6/27/2012, at 4-5.  As the trial court noted, Orie Melvin left the Allegheny County bench in 1997 and provided no good reasons as to why any current members of that bench could not preside over the present case with integrity and objectively.  *Id.*  Moreover, *Armor* involved support payments to the judge's spouse, and thus arguably the judge had a direct financial interest in the outcome of the litigation.  In this case, in significant contrast, neither Sasinoski nor her husband, as non-parties, had any direct interest in the outcome of Orie Melvin's case.  *Id.*

Orie Melvin posits that having a direct interest in the outcome of the case is not the correct test under *Armor*, and that instead the appropriate inquiry is whether "the impartiality of a judge may reasonably be questioned if he or she is assigned to preside over a case where the defendant is a former member of the court and a key prosecution witness is married to a sitting judge on the court." Orie Melvin's Brief at 40. We disagree, as we do not read *Armor* to contemplate the recusal of an entire bench under the circumstances presented here. *Armor* involved two key facts, namely a current member of the bench with a direct financial interest in the outcome of the case. *Armor* is thus inapposite to the present case, as there are no relevant factual parallels. Orie Melvin's tenure on the Allegheny County bench ended in 1997, so she has no current relationship as a colleague with any of its members. Moreover, neither Sasinoski nor her husband has any direct interest (financial or otherwise) in the outcome of Orie Melvin's trial, and we do not believe that a witness' spousal relationship with a judge, without more, automatically requires the recusal of an entire bench, as no appearance of impropriety necessarily arises from that attenuated fact.

In general, our Supreme Court has advised that a motion for recusal is not directed to an entire bench, and that decisions regarding recusal must be decided by the jurist whose impartiality is being challenged. *See, e.g.*, *Commonwealth v. White*, 734 A.2d 374, 384 (Pa. 1999).

> As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. … In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa.) (citations omitted), *cert. denied*, 528 U.S. 810 (1998). "It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Id.*

In its ruling at the time of the preliminary hearing, the trial court, citing to *Abu-Jamal*, properly advised that "[w]hether the judge ultimately assigned to this case … should recuse, is a matter that can only be addressed by that judge." Trial Court Opinion, 6/27/2012, at 5. Orie Melvin did not, however, move for the recusal of the trial judge assigned to the trial of her case, the Honorable Lester G. Nauhaus, and at no time offered any evidence to establish that Judge Nauhaus could not preside over her case without bias, prejudice, or unfairness. As a result, no relief is due on this issue.

## D. Statute of Limitations

For her fifth issue on appeal, Orie Melvin contends that her convictions for crimes committed in 2003 were barred by the statute of limitations, and that the trial court erred in ruling that 42 Pa.C.S.A. § 5552(c)(2) extended the limitations period for her crimes. Orie Melvin argues that section 5552(c)(2) extends the limitations period only for a "public officer or employee" and that judges cannot be so designated. Orie Melvin insists that judges are "judicial officers," as that term is defined in 42 Pa.C.S.A. § 102, and thus section 5552(c)(2) does not apply in her circumstance.

Orie Melvin raises an issue of statutory interpretation. "In examining this determination of statutory interpretation, our scope of review is plenary, as it is with any review of questions of law." *Joseph F. Cappelli & Sons, Inc. v. Keystone Custom Homes, Inc.*, 815 A.2d 643, 645 (Pa. Super. 2003) (quoting *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1170 (Pa. 1995)). When asked to construe a statute, "we are guided by the principles set out in the Statutory Construction Act, 1 P.S. §§ 1501-1991." *Centolanza v. Lehigh Valley Dairies, Inc.*, 658 A.2d 336, 339 (Pa. 1995). Moreover, [t]he object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 P.S. § 1921(a); *see also Carrozza v. Greenbaum*, 866 A.2d 369, 384 (Pa. Super. 2004), *affirmed*, 916 A.2d 553 (Pa. 2007).

Section 5552(c)(2) provides as follows:

> (c) Exceptions.--If the period prescribed in subsection (a), (b) or (b.1) has expired, a prosecution may nevertheless be commenced for:
>
> > (2) Any offense committed by a public officer or employee in the course of or in connection with his office or employment at any time when the defendant is in public office or employment or within five years thereafter, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than eight years.

42 Pa.C.S.A. § 5552(c)(2).  42 Pa.C.S.A. § 102 defines "judicial officer" as "[j]udges, magisterial district judges and appointive judicial officers." 42 Pa.C.S.A. § 102.  The phrase "public officer or employee" does not appear to be defined anywhere in Title 42.[15]

---

[15]  The trial court applied the definition of "public official" in section 1102 of the Pennsylvania Ethics Act, 65 Pa.C.S.A. § 1102, when interpreting section 5552(c)(2).  We disagree that this definition is applicable here for two reasons.  First, our Supreme Court has ruled that the Ethics Act does not apply to judges.  *Kremer*, 469 A.2d at 595-96.  Second, the language of the Ethics Act specifically states that its definitions apply only to the terms in the Ethics Act itself.  65 Pa.C.S.A. § 1102 ("[t]he following words and phrases *when used in this chapter* shall have … the meanings given to them in this section …).

We likewise disagree with the trial court's reliance on *Commonwealth v. O'Kicki*, 597 A.2d 152 (Pa. Super.), *appeal denied*, 626 A.2d 1156 (Pa. 1991).  The issue of whether a judge is a "public officer or employee" was never raised in *O'Kicki* and thus our decision in that case provides no binding authority in the present circumstance.

When interpreting a statute, the Statutory Construction Act dictates that we must give plain meaning to the words therein. *See* 1 Pa.C.S.A. §§ 1901, 1903. "Absent a definition in the statute, statutes are presumed to employ words in their popular and plain everyday sense, and the popular meaning of such words must prevail." *Centolanza*, 658 A.2d at 340 (citing *Harris-Walsh, Inc. v. Borough of Dickson City*, 216 A.2d 329 (Pa. 1966)). In this regard, our Court, guided by our Supreme Court, has held that "dictionary definitions offer adequate direction for statutory interpretation consistent with the Statutory Construction Act." *Zator v. Coachi*, 939 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 961 A.2d 859 (Pa. 2008); *Centolanza*, 658 A.2d at 340 (relying on *Webster's Ninth New Collegiate Dictionary* to interpret an undefined statutory phrase). Black's Law Dictionary defines "Public Official" as "[o]ne who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." BLACK'S LAW DICTIONARY 1119 (8th ed. 2004).

Employing the popular and plain everyday sense of the words, the phrase "public officer" refers to someone who holds a public office (either by election or appointment) or is otherwise entrusted with carrying out functions for the Commonwealth. The intent of the legislature in enacting section 5552(c)(2) was to extend the statute of limitations for criminal offenses for this subset of individuals in recognition of the unique positions

that they hold.[16]  As such, in our view, the legislature intended for judges, most of whom are elected and all of whom hold respected public offices and carry out the power of the judicial branch of government, to be included within the ambit of section 5552(c)(2).[17]  Accordingly, no relief is due on this issue.

## E.  Prosecutorial Misconduct

For her sixth issue on appeal, Orie Melvin maintains that the trial court erred in not dismissing the charges against her based upon an egregious instance of prosecutorial misconduct relating to an exhibit introduced during the testimony of Sasinoski.  The trial court summarized the relevant factual background of the incident as follows:

> During the direct testimony of [Sasinoski], the Commonwealth entered into evidence without objection Exhibit 32, tab #19.  (Transcript of Trial from January 24, 2013 through February 21, 2013 (hereinafter referred to as "TT") at 1180).  This exhibit was a one-page handwritten document stating 'Lisa Do you have proposed answers for Questions 3, 8, & 10?  Can I have this Monday.".  (TT at 1181).  [Sasinoski] testified the document was hand-written by [Orie Melvin], and she was being asked to answer questions 3, 8, & 10 on a

---

[16]  While it is true that Orie Melvin also meets the definition of "judicial officer" under 42 Pa.C.S.A. § 102, she offers no good reason why the phrases "judicial officer" and "public officer" are mutually exclusive of each other.  For the reasons explained herein, under section 5552(c)(2), judges are both "judicial officers" and "public officers."

[17]  Without specifically relying on this fact in reaching our conclusion, we note that judicial officers in Pennsylvania receive W-2 statements reporting salaries to the federal government as employees of the Commonwealth.

political questionnaire. [Sasinoski] was asked, 'That would be an endorsement questionnaire of a special interest group?' and she relied 'Yes'. (TT at 1181). The Commonwealth then went on to ask questions about the next exhibit.

On cross-examination, [Sasinoski] was asked about a letter containing a page with eleven questions that at some point had been attached to the single handwritten document she had testified about on direct examination (Commonwealth Exhibit 32 tab #19). [Sasinoski] replied that she had not seen the eleven-question document before. [TT at 1201-1203].

The next court day, [Orie Melvin] filed a Defense Motion to Dismiss Criminal Charges Due to Prosecutorial Misconduct. The basis for the motion was that the testimony of [Sasinoski] was erroneous. The document she had testified about, Commonwealth Exhibit 32 tab #19, was actually written in 1998 and attached to a letter discussing an educational event at which [Orie Melvin] was a panel member. The five-page document was admitted into evidence as Defendant's Exhibit H. The 1998 letter included eleven questions labeled Proposed Questions for Professional Development Roundtable. [Orie Melvin's] handwritten note was from 1998 and had requested information for a legal education event, not a political endorsement questionnaire, as [Sasinoski] had incorrectly testified to on direct examination.

Trial Court Opinion, 9/12/2013, at 9-10. After hearing oral argument on the motion to dismiss, the trial court denied the motion, ruling that the prosecutor was not guilty of intentional misconduct and had instead made a "mistake." N.T., 2/1/2013, at 1237.

"Our standard of review for a claim of prosecutorial misconduct is limited to 'whether the trial court abused its discretion.'" **Commonwealth v. Harris**, 884 A.2d 920, 927 (Pa. Super. 2005) (quoting **Commonwealth v. DeJesus**, 787 A.2d 394, 407 (Pa. 2001), *cert. denied*, 537 U.S. 1028 441 (2002)), *appeal denied*, 928 A.2d 1289 (Pa. 2007); **Commonwealth v. Culver**, 51 A.3d 866, 871 (Pa. Super. 2012). "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." **Commonwealth v. Baez**, 720 A.2d 711, 729 (Pa. 1998), *cert. denied*, 528 U.S. 827 (1999).

> The Pennsylvania Supreme Court has stated that '[t]he essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." **Commonwealth v. Pierce**, 645 A.2d 189, 197 (Pa. 1994). … Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required.

**Commonwealth v. Francis**, 665 A.2d 821, 824 (Pa. Super. 1995) (some internal citations omitted). More recently, our Supreme Court opined on the meaning of the phrase, "prosecutorial misconduct," stating:

> The phrase 'prosecutorial misconduct' has been so abused as to lose any particular meaning. The claim either sounds in a specific constitutional provision that the prosecutor allegedly violated or, more frequently, like most trial issues, it implicates the narrow review available under Fourteenth Amendment due process. *See Greer v. Miller*, 483 U.S. 756, 765 (1987) ('To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.') (internal quotation marks omitted); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them."). However, "[t]he Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty." *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). The touchstone is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

*Commonwealth v. Cox*, 983 A.2d 666, 685 (Pa. 2009).

Given this authority, we focus not on the culpability of the prosecutor but rather on whether his actions deprived Orie Melvin of a fair trial by prejudicially rendering the jury incapable of fairly weighing the evidence and entering an objective verdict. Based upon our review of the certified record, we conclude that the trial court did not err in denying Orie Melvin's motion to dismiss. We do so for two reasons. First, the prejudice to Orie Melvin was minimal, as three other witnesses testified that law clerks were required to fill out political questionnaires. N.T., 2/5/2013, at 1380

(Creenan); 1493-94 (Degener); 1629 (Katherine Squires, hereinafter, "Squires").

Second, the trial court took appropriate steps to reduce any prejudice to Orie Melvin. During Sasinoski's testimony before the jury, the trial court questioned Sasinoski directly and made the jury aware of the issues with respect to the prior exhibit:

> [THE COURT]: Your testimony was inaccurate.
>
> [SASINOSKI]: Oh, okay.
>
> [THE COURT]: Okay. As a matter of fact, the document that it was attached to was a four page document from Buchanan Ingersoll, which is a major law firm in the City of Pittsburgh. They were doing a continuing legal education seminar. The Questions 3, 8, and 10 were proposed questions for the judge; is that not accurate?
>
> [SASINOSKI]: I don't have a recollection of that.
>
> [THE COURT]: Okay. This has been marked for identification.
>
> Ladies and gentlemen of the jury, you are to accept this as the document, this is the original document in which Tab 19 was, along with the attachment, which was submitted to Ms. Sasinoski whenever it was submitted. At the time that it was originally – the District Attorney was in possession of these additional pages, and they were not submitted to you during Ms. Sasinoski's testimony. Also be aware of the fact that [the] defense was in possession of these four pages. They knew they were attached. All right.
>
> There is a question as to how they were attached. It is the defense's belief that they were attached

with a paper clip, or a staple, which is the way it is now, but when they got it, it was attached with a paper clip. And if you look at Tab 19, you will see that there is a paper clip. For whatever that means to you, take that.

N.T., 2/4/2013, at 1253-55.

Moreover, during its charge to the jury, the trial court specifically advised the jury that Sasinoski had provided inaccurate testimony and gave a "false in one, false in all" instruction:

One of the Commonwealth's witnesses, Lisa Sasinoski, gave inaccurate testimony concerning a handwritten note which was marked and admitted into evidence as Commonwealth Exhibit 32, Tab #19. Ms. Sasinoski testified related [*sic*] to a questionnaire from a special interest group when in fact it related to a continuing legal education seminar.

As has been pointed out by one of the attorneys, there is a rule in the law which I learned as *falsus in uno, falsus in omnibus*, which translated from Latin means false in one, false in all. If you decide that a witness deliberately testified falsely about a material point, that is about a matter that could effect [*sic*] the outcome of this trial, you may for that reason alone choose to disbelieve the rest of his or her testimony, but you are not required to do so. You should consider not only the deliberate falsehood, but also all other factors bearing on the witness' credibility in deciding whether to believe other parts of her testimony.

N.T., 2/15/2013, at 2806-08.

For these reasons, even to the extent that the prosecutor here committed intentional misconduct (rather than a mere mistake, as the trial

court concluded), it was not error to deny Orie Melvin's motion to dismiss. The prejudice to Orie Melvin was minimal and the trial court took appropriate steps to clarify for the jury the precise nature of the issues relating to the handwritten note associated with the questionnaire.[18] Nothing in the certified record compels a conclusion that the jury was rendered incapable of fairly weighing the evidence and entering an objective verdict.

## F. Propriety of Joinder of Case With Janine Orie's Case

For her seventh issue on appeal, Orie Melvin claims that the trial court erred in granting the Commonwealth's motion to join her case with that of her sister, Janine Orie. According to Orie Melvin, the trial court "failed to recognize or appreciate the differences that required separate trials." Orie Melvin's Brief at 57.

---

[18] In her appellate brief, Orie Melvin details another instance of alleged introduction of false evidence by the Commonwealth during the testimony of Commonwealth witness Pavlot. Orie Melvin's Brief at 55-56. The certified record does not reflect that Orie Melvin moved for a mistrial or other relief, however, and therefore, this issue is waived. *See, e.g.*, *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) ("Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver."); *Commonwealth v. Jones*, 460 A.2d 739, 741 (Pa. 1983) (claim of prosecutorial misconduct waived where defense counsel immediately objected to the prosecutor's conduct but failed to request mistrial or curative instructions); *Commonwealth v. Chimenti*, 524 A.2d 913, 921 (Pa. Super.) (issue was waived where defense counsel objected to a question posed by the prosecutor but failed to ask the trial judge to do anything further after the question had been answered), *appeal denied*, 533 A.2d 711 (Pa. 1987).

Whether cases against different defendants should be consolidated for trial "is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." ***Commonwealth v. Boyle***, 733 A.2d 633, 635 (Pa. Super. 1999). Procedurally, Rule 582 of the Pennsylvania Rules of Criminal Procedure governs the joinder of separate criminal informations. Rule 582 dictates, in pertinent part, as follows:

> (1) Offenses charged in separate indictments or informations may be tried together if:
>
> > (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
> >
> > (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P 582(A). The severance of offenses is governed by Pa.R.Crim.P. 583, which states that the trial court "may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

Based upon these rules, our Supreme Court has formulated the following test for deciding the merits of a motion to sever:

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or

> information, or opposes joinder of separate indictments or informations, the court must [] determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997) (quoting *Commonwealth v. Lark*, 543 A.2d 491, 496–97 (Pa. 1988)), *cert. denied*, 525 U.S. 1015 (1998).

For Orie Melvin, the first part of the *Collins* test requires us to determine whether the evidence introduced with respect to each of the offenses would be admissible in a separate trial for the other. In a written opinion, the trial court reviewed in considerable detail all of the charges against both Orie Melvin and Janine Orie and concluded that joinder of the two cases was appropriate. Trial Court Opinion, 8/23/2012, at 14. We need not review the entirety of this analysis, however, since on appeal Orie Melvin challenges just two of the trial court's determinations.

First, Orie Melvin argues that the conspiracy allegations against her and Janine Orie differ in multiple respects. At docket number CC 201010286, Janine Orie was charged with conspiring with Jane Orie and Pavlot to use the services of Jane Orie's legislative staff for the benefit of Orie Melvin's 2009 political campaign. In Count 4, Orie Melvin was charged with conspiring with Jane Orie and Janine Orie to commit theft of services in

connection with Orie Melvin's 2003 and 2009 political campaigns, including with respect to both Orie Melvin's judicial staff and Jane Orie's legislative staff. Orie Melvin identifies three principle differences with these charges. First, Orie Melvin was not alleged to have conspired with Pavlot at any time. Second, the Janine Orie-Jane Orie-Pavlot conspiracy was only for the 2009 political campaign and did not also encompass the 2003 campaign. Third, while Orie Melvin was charged with conspiring with Janine Orie to commit theft of services, Janine Orie was not similarly charged with conspiring with Orie Melvin to do so. Orie Melvin's Brief at 58-59. According to Orie Melvin, "[s]ince the alleged co-conspirators, relevant time period and object of the charged conspiracies are not the same, the evidence was not universally admissible." *Id.* at 59.

Nothing in the Pennsylvania Rules of Criminal Procedure or the *Collins* test, however, requires a perfect identity of the charges against two defendants before their cases may be joined for trial. While Orie Melvin has identified certain differences between the charges against the two defendants, she has not established that any evidence introduced against one of the defendants would not have been admissible in a separate trial for the other. Orie Melvin was charged and convicted of conspiring with Janine Orie and Jane Orie to commit theft of services with respect to both her own judicial staff and Jane Orie's legislative staff, including in both her 2003 and 2009 political campaigns. That made Orie Melvin and Janine Orie co-

conspirators with respect to all of the theft of services charges, and thus made admissible against each of them all of the acts of the other in furtherance of the conspiracy. *See, e.g.*, ***Commonwealth v. Cimrose***, 478 A.2d 1318, 1324 (Pa. Super. 1984). While Orie Melvin was not charged with conspiring with Pavlot, she was charged and convicted, both as a principle and by and through two accomplices (Janine Orie and Jane Orie), of diverting the use of Jane Orie's legislative staff for the benefit of her 2009 political campaign – the object of the conspiracy involving Pavlot. And while there was no reciprocal charge against Janine Orie for conspiring with Orie Melvin to divert the use of Orie Melvin's judicial staff for the benefit of Orie Melvin's 2003 and 2009 political campaigns, both were separately charged and convicted of doing precisely that (Orie Melvin in Count 3 and Janine Orie in Count 1 at CC 201115981).

Second, Orie Melvin contends that her case should not have been joined with Janine Orie's case because Janine Orie alone was charged and convicted of tampering with and altering physical evidence, namely the deletion of campaign-related computer files in 2009 and 2010 (Counts 3 and 4 at docket number CC 201115981). Orie Melvin's Brief at 60. The trial court rejected this argument, stating:

> The alleged acts of [Janine Orie] in attempting to destroy or conceal evidence of the conspiracy to divert services is likely to be admissible against [Orie Melvin] as those acts, if they are proven to have occurred, were arguably made in furtherance

- 46 -

> of the common design of the alleged underlying conspiracy. Certainly, the concealment of the documents that would constitute direct evidence of existence of the conspiracy would further the common design of this conspiracy: the diversion of the services of public employees to the private interests of the defendants.

Trial Court Opinion, 8/23/2012, at 8-9.

We find no abuse of discretion in this analysis, as Janine's acts of tampering with evidence were in furtherance of her conspiracy with Orie Melvin to divert public services to Orie Melvin's benefit, thereby making evidence of Janine's acts admissible against Orie Melvin. **Cimrose**, 478 A.2d at 1324. In particular, we note that at trial, the Commonwealth presented evidence to prove the existence of the underlying conspiracy between Orie Melvin and Janine Orie, as the jury convicted Orie Melvin of this charge (Count 4) and on appeal she does not challenge the sufficiency of the evidence presented in support of this conviction. The cases cited by Orie Melvin in this regard are inapposite, as they involved circumstances in which severance should have been granted since one defendant faced charges for which the other defendant clearly bore no potential responsibility. **See Commonwealth v. Brookins**, 10 A.3d 1251, 1257 (Pa. Super. 2010) ("Significantly, Brookins's conduct appears to bear no relationship to the planning and execution of the attempted kidnapping and robbery with which Jordan, McKeiver, and Thompson were charged."), *appeal denied*, 22 A.3d 1033 (Pa. 2011); **Commonwealth v. Jackson**, 303

A.2d 924, 925 (Pa. 1973) ("Since no evidence was given to link appellant to the Oakmont robbery, the fact that the crimes were similar in nature does not afford a sound basis for ordering their consolidation at trial.").[19]

Moving to the second part of the *Collins* test, Orie Melvin claims that the evidence relating to the different charges against her and Janine Orie were not capable of separation because "the conspiracies charged in this case are complex, involve different persons, relate to different time periods, and involve contradictory allegations." Orie Melvin's Brief at 60. The trial court disagreed, concluding that the jury was capable of separating the evidence presented against each defendant and following any instructions to consider evidence against only one defendant as necessary. Trial Court Opinion, 8/23/2012, at 9. Orie Melvin has offered no convincing argument to suggest that the trial court abused its discretion in this regard.

Finally, with respect to the third part of the *Collins* test, namely prejudice to the defendant as a result of the joinder, we likewise conclude that the trial court did not abuse its discretion in finding no such prejudice. On appeal, Orie Melvin argues that the "risk was unavoidable that the jury would cumulate the evidence of the various crimes and find guilt even

_____

[19] Orie Melvin's citation to **Commonwealth v. Boyd**, 461 A.2d 1294 (Pa. Super. 1983), likewise provides no support for her position. **Boyd** did not involve the consolidation for trial of charges against separate defendants, but rather raised the issue of whether a single defendant should have been tried separately for wholly unrelated drug charges, as each charge involved "a totally discrete set of facts." **Id.** at 1295-96.

though the evidence, when considered separately and applied to each defendant individually, does not support a conviction." Orie Melvin's Brief at 62. To the extent that the accumulation of evidence resulted in any prejudice, it would have been to Janine Orie, as the overwhelming preponderance of the evidence introduced at trial related to Orie Melvin's actions. Moreover, we note that on appeal, Orie Melvin has not identified any specific testimony or exhibit introduced at trial against Janine Orie that could not have been introduced at a separate trial against her alone, or otherwise offered any basis for concluding that the introduction of any such evidence (if it exists) resulted in any substantial prejudice to her.

## G. Violation of Discovery Rights Regarding Jane Orie's Computer and Electronic Evidence

For her eighth issue on appeal, Orie Melvin asserts the trial court's denial of her request to inspect and examine original computer hard drives and electronic evidence seized from the legislative office of Jane Orie violated her rights to discovery under Rule 573(B)(1)(f) of the Pennsylvania Rules of Criminal Procedure as secured in *Brady v. Maryland*, 373 U.S. 83 (1963), the Fifth and Sixth Amendments to the United States Constitution, and Article I, Section 9 of the Pennsylvania Constitution. Orie Melvin's Brief at 65.

In our prior opinion in the *Jane Orie* case, we described the subpoena used to obtain electronic evidence at the former state senator's legislative office as follows:

The December 11, 2009 search warrant for Orie's district office identified the items to be seized and searched as 'all computer hardware'; 'software'; 'documentation' to access the computer systems and passwords; and electronically stored data referencing: Joan Orie Melvin or her 2009 political campaign, and checks, campaign contributions, thank you letters, and masthead for [Orie Melvin's] 2009 political campaign, and Orie's 2001–2009 elections or political campaigns, and checks, campaign contributions, thank you letters, and masthead for Orie's 2001 through present political campaigns. The accompanying 13–page affidavit of probable cause detailed the results of the Commonwealth's investigation and described interviews with numerous employees of Orie, including [Joshua] Dott, Audrey Rasmussen, and Pavlot, who each described political campaign-related activities conducted in the office. Pavlot stated she had done campaign work on legislative time for [Jane Orie] since 2001, as well as campaign work for Orie's sister, [Orie Melvin], in 2009, and she described those duties. Pavlot and other staffers indicated that legislative computers and other office equipment were used for campaign-related purposes.

*Orie*, 88 A.3d at 1005.

Jane Orie and the Senate Republican Caucus both asserted various claims of privilege with respect to the seized materials, including attorney-client privilege and the Speech and Debate Clause legislative privilege (Article II, Section 15 of the Pennsylvania Constitution). On December 29, 2009, the Honorable John A. Zottola, the Supervising Judge of the Grand Jury, appointed a Special Master (former Duquesne Law Professor Bruce Antowiak), to review for privilege all of the evidence seized in connection

with Orie-related warrants. *Id.* at 1004. According to Detective Graber, all seized evidence was delivered (pursuant to a process established by Judge Zottola) to the Special Master. After his review, the Special Master then sent the evidence to Judge Zottola, who (after his own review) sent, *inter alia*, "a redacted viewable version" of the seized hard drives back to the District Attorney's office. *Id.* at 1005 n.23; N.T., 12/13/2010, at 77-78. In *Orie*, we concluded that this process ensured that all of the seized evidence was reviewed by the Special Master and Judge Zottola before any of it was turned over to the District Attorney's office, and that the purpose of the process was to guarantee that the District Attorney's office "had access only to non-privileged documents." *Orie*, 88 A.3d at 1004, 1011.

In April of 2010, the Senate Republican Caucus obtained forensic images of the hard drives seized from Jane Orie's office. N.T., 12/14/2010, at 269. On October 29, 2012, the trial court granted Orie Melvin's motion and directed the Senate Republican Caucus to make available to Orie Melvin "all original electronic evidence which, in whole or in part, was examined or searched in response to requests made by or subpoenas served by the Allegheny County District Attorney's Office." Trial Court Order, 10/29/2012, at 1. On November 7, 2012, after receipt of a motion for reconsideration filed by the Senate Republican Caucus, the trial court vacated its prior order and referred the matter to Judge Zottola. On two subsequent occasions, Judge Zottola denied requests by Orie Melvin for the original hard drives.

N.T., 12/21/2012, at 51-52 ("What it does is eliminate the safeguards that the Court put in place with respect to privileged information."); N.T., 1/11/2013, at 18-19.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. A *Brady* violation occurs when: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant. *Commonwealth v. Paddy*, 800 A.2d 294, 305 (Pa. 2002).

Rule 573 of the Pennsylvania Rules of Criminal Procedure was promulgated in response to the dictates of *Brady*. *Commonwealth v. Green*, 640 A.2d 1242, 1246 (Pa. 1994). Rule 573 provides, in relevant part, as follows:

> **Rule 573. Pretrial Discovery and Inspection**
>
> *   *   *
>
> **(B) Disclosure by the Commonwealth.**
>
>> (1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested

items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

> * * *

> (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence.

Pa.R.Crim.P. 573(B). Upon a finding of violation of Rule 573, the trial court "may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 573(E).

In this case, Orie Melvin does not deny that she received all of the evidence obtained by the Commonwealth after the privilege reviews by the Special Master and Judge Zottola. Instead, Orie Melvin argues that pursuant to Rule 573(B)(1)(f), she had a right to inspect and examine the original computer equipment seized from Jane Orie's legislative office. Orie Melvin's Brief at 63. She further contends that this is a matter of fundamental fairness, as "the Commonwealth was permitted to search the computer equipment for potentially relevant information and was permitted

to introduce evidence from that equipment at trial but Orie Melvin was denied the same opportunity." *Id.* at 65.

We disagree for several reasons. First, Orie Melvin has not cited to any evidence in the certified record to support her claim that the Commonwealth had any opportunity to search the original computer equipment seized from Jane Orie's office. As set forth hereinabove, the District Attorney's office had no access to the original computer equipment or other evidence seized from Jane Orie's office, as it was within the exclusive control of Judge Zottola and the Special Master. Both the District Attorney and Orie Melvin received the same access to the same non-privileged evidence forthcoming after the privilege reviews. In her appellate brief, Orie Melvin has not identified for this Court any evidence the Commonwealth introduced at trial obtained from Jane Orie's office to which she was denied access (either by the trial court, Judge Zottola, or the Commonwealth).

Second, **Brady** and Rule 573 set forth the Commonwealth's obligations to provide discovery materials that are within its possession to the defense. See Pa.R.Crim.P. 573(B)(1) ("the Commonwealth shall disclose to the defendant's attorney"); **Commonwealth v. Collins**, 957 A.2d 237, 253 (Pa. 2008) (the Commonwealth does not violate disclosure rules when it fails to disclose to the defense evidence that it does not possess and of which it is unaware); **see also Commonwealth v.**

*Boczkowski*, 846 A.2d 75, 97 (Pa. 2004) (citing *Commonwealth v. Gribble*, 703 A.2d 426 (Pa. 1997), *abrogated on other grounds by Commonwealth v. Burke*, 781 A.2d 1136 (Pa. 2001)). As a result of the procedures established by Judge Zottola, the Commonwealth here did not have custody or control of the original computer equipment sought by Orie Melvin, and had no ability to produce it to Orie Melvin. As a result, Orie Melvin has not established a violation of the Commonwealth's obligations under *Brady* or Rule 573.

Finally, no *Brady* violation occurs when the evidence is available to the defense through non-governmental sources. *Commonwealth v. Carson*, 913 A.2d 220, 244-45 (Pa. 2006), *cert. denied*, 552 U.S. 954 (2007); *Commonwealth v. Morris*, 822 A.2d 684, 696 (Pa. 2003); *Paddy*, 800 A.2d at 305. The certified record in this case establishes that the non-governmental entities asserting privilege claims with respect to the evidence in question, including the Senate Republican Caucus and Jane Orie, had duplicate copies of the hard drives removed from Jane Orie's office. N.T., 1/11/2013, at 18-19. Orie Melvin could presumably have obtained the requested access to these sources from one or more of these entities or individuals.

## H. Violation of Discovery Rights Regarding Superior Court Computer and Electronic Evidence

For her ninth issue on appeal, Orie Melvin maintains that the trial court erred in denying her requests to examine the computers used by her

judicial staff in the possession of the Superior Court. In response to subpoenas issued by the Commonwealth, the Administrative Office of Pennsylvania Courts ("AOPC") performed searches on the Superior Court's computers using key search terms set forth in the subpoena. N.T., 11/19/2012, at 8-9. The AOPC then provided the documents produced from these searches to the Commonwealth and to Orie Melvin. *Id.* On October 29, 2012, the trial court, at the request of, *inter alia*, Orie Melvin, entered an order directing the AOPC to "make available for inspection and examination by the computer forensic experts of the Defendants all original electronic evidence which, in whole or in part, was examined or searched in response to requests made by or subpoenas served by the Allegheny County District Attorney's Office." Order, 10/20/2012, at 1.

In response, the AOPC moved for reconsideration, emphasizing that it had not granted the Commonwealth physical access to the Superior Court's computers, and that instead it had merely run the searches delineated in the Commonwealth's subpoenas. Motion for Reconsideration of the Court's October 29, 2012 Order and for a Protective Order, 11/19/2012, at 2. The AOPC objected to permitting Orie Melvin's experts access to the Superior Court's computers on a variety of grounds, including that it exposed all of the Superior Court's judicial data -- much of which is confidential and privileged -- to third parties, and indicated that no mechanism existed to limit examination and inspection to information relevant to this case. *Id.* at

4.  The trial court heard oral argument on November 19, 2012, at which time counsel for Orie Melvin renewed the request for access to the Superior Court's computers to "test the authenticity, the validity, and the accuracy of the information that the AOPC produced to the Commonwealth which the Commonwealth wishes to introduce into evidence against our client." N.T., 11/19/2012, at 6. The trial court refused to do so, vacating its October 29, 2012 order. The trial court permitted Orie Melvin to depose the AOPC personnel who conducted the key word searches.

No **Brady** or Rule 573 issues are presented here, as Orie Melvin does not suggest that the Commonwealth had possession or control of the Superior Court's computers. Accordingly, we review the trial court's denial of Orie Melvin's discovery motion for an abuse of discretion. **Commonwealth v. Mendez**, 74 A.3d 256, 260 (Pa. Super. 2013), ("Generally, on review of an order granting or denying a discovery request, an appellate court applies an abuse of discretion standard."), *appeal denied*, 87 A.3d 319 (Pa. 2014). Here we find no abuse of discretion. Orie Melvin offered no basis to dispute the AOPC's contention that permitting access to the Superior Court's computers would provide unauthorized access to a myriad of privileged and confidential documents, and offered no specific procedures or methods that could have been employed to satisfy the AOPC's confidentiality and privilege concerns. Moreover, to the extent that Orie Melvin sought evidence from the Superior Court's computers that had

not been produced by the AOPC in response to the Commonwealth's subpoenas, Orie Melvin could have issued her own subpoena to the AOPC requesting the production of such information. The certified record does not reflect that she ever did so.

## I. Defects in the Preliminary Hearing

For her tenth issue on appeal, Orie Melvin claims that at the preliminary hearing the Commonwealth failed to make out a *prima facie* case to support the charges for theft of services, misapplication of government property, or conspiracy to tamper with or fabricate evidence. Orie Melvin's Brief at 68-74. The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish that a crime was committed and a probability that the defendant was connected therewith. ***See, e.g.***, ***Commonwealth v. Jackson***, 849 A.2d 1254, 1257 (Pa. Super. 2004). Once a defendant has gone to trial and has been found guilty of the crime or crimes charged, however, any defect in the preliminary hearing is rendered immaterial. ***See, e.g.***, ***Commonwealth v. Sanchez***, 82 A.3d 943, 984 (Pa. 2013). Because Orie Melvin was convicted of the above-referenced crimes following a trial on the merits, she is entitled to no relief on any alleged defects in the rulings of the magisterial district judge at the preliminary hearing.

## J. Evidence of Productivity of Orie Melvin's Judicial Chambers

For her eleventh issue on appeal, Orie Melvin argues the trial court erred in refusing to permit her to admit into evidence reports relating to the productivity of her judicial chambers in 2003 and 2009. Our standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. **Commonwealth v. Hanford**, 937 A.2d 1094, 1098 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record. **Commonwealth v. Mendez**, 74 A.3d 256, 260 (Pa. Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2014).

On February 8, 2013, Orie Melvin called Delores Bianco ("Bianco"), the Deputy Director for the Superior Court, to testify on her behalf. Bianco testified that she had brought with her monthly reports provided to the judicial chambers of each Superior Court judge on a monthly basis, from 2003 through 2009. N.T., 2/8/2013, at 2148-49. These reports begin in January of each year and cumulate the included information each month, such that the December report shows the information for the full year. *Id.* According to Bianco, these monthly reports show, *inter alia*, the number of

- 59 -

cases assigned to, and completed by, each Superior Court judge, including Orie Melvin. *Id.* On cross-examination and through questions posed by the trial judge, Bianco indicated that the reports contain only "raw numbers," and provide no information about the nature or complexity of the cases, or how long or short the memoranda or opinions deciding the cases may be. *Id.* at 2153-53. Similarly, Bianco acknowledged that the reports made no attempt to reflect the quality of the memorandum or opinion. *Id.* at 2154.

Prior to Bianco testifying about information in the reports specifically relating to Orie Melvin or any other Superior Court judge, counsel for Orie Melvin moved for the admission into evidence of the exhibits containing the monthly reports. The trial court deferred ruling on the admissibility. *Id.* at 2161.

On February 12, 2013, the trial court ruled that these monthly reports, and four charts summarizing their contents, were irrelevant and thus not admissible. *Id.* at 2536.

On appeal, Orie Melvin contends that this evidence was relevant to negate the Commonwealth's accusation that she diverted judicial resources to political activity in 2003 and 2009. As her counsel argued,

> In this case, Judge, the determination of whether or not the services were properly utilized by my client, or whether they were improperly or illegally diverted to an illegal exercise or non-judicial exercise is a determination that has to be evaluated by the fact-finder, the jury. That one measure, one measure, there may be others, but one measure is most

- 60 -

> clearly what cases were decided, whether they were decided on time, and whether there was that productivity by the chambers. … That measure of productivity indicates that the services are being properly applied to the decisions of the cases before the Court.

*Id.* at 2520-21, 2535. Counsel also asserted that the evidence bore directly on the credibility of former members of her judicial staff who testified that they spent a significant percentage of their workdays performing political, rather than judicial, tasks:

> That is the very point of the argument, Judge. Sasinoski testifies, Squires testifies, Ms. Weibel[20] comes in here and testifies, and they say that there has been a theft, there has been a depreciation or a taking from the workday. Three hours a day in 2003 by Squires. For god's sake, the evidence of the productivity of the offices defies what the testimony – it's a credibility challenge.

*Id.* at 2533.

For the reasons that follow, we find no error in the trial court's decision not to admit the proffered evidence because we agree that the proffered evidence was not relevant. Evidence is relevant evidence if it tends to make the existence of a material fact more or less probable than it would be without the evidence. Pa.R.E. 401; ***Commonwealth v. Dillon***, 925 A.2d 131, 136 (Pa. 2007).

---

[20] Jackelyn Weibel is a detective in the Allegheny County District Attorney's office who testified as an expert in forensic accounting. N.T., 2/7/2013, at 2020. She testified as to the value of the services Orie Melvin allegedly diverted to her own use. ***Id.*** at 2048 ($27,702.68 in 2003 and $5,773.03 in 2009).

The trial court did not abuse its discretion in ruling that the monthly reports were irrelevant to the charges against Orie Melvin, as we conclude that her relevance arguments misconstrue the nature of the crime of theft of services. To establish a theft of services under 18 Pa.C.S.A. § 3926(b), the Commonwealth only had to establish that Orie Melvin utilized her judicial staff for purposes other than judicial work. The only appropriate inquiry under section 3926(b) is whether Orie Melvin required her judicial staff to perform, for her personal benefit, non-judicial (*i.e.*, political) duties,[21] and it is irrelevant that they also performed their judicial tasks. The Commonwealth had no obligation to prove that the diversion of services resulted in an inability to complete the judicial work for which they were employed by the Commonwealth. As the trial court correctly observed, "proof of no loss to the Commonwealth is not a defense to the charge of theft of services by diversion of services." Trial Court Opinion, 8/12/2013, at 15.

In addition, the monthly reports provided only statistics on the output of the entire chambers for the relevant time periods, and thus offer no indication as to the productivity of any particular law clerk during that period or in general. As such, they do not, as Orie Melvin now contends, tend to contradict the testimony of a specific law clerk regarding the portion

---

[21] As explained **infra** at 69-70, no judicial employee testified that he or she performed political services at Orie Melvin's direction on a volunteer basis.

of his or her time that was spent on non-judicial tasks.[22]  In this regard, we note that the monthly reports offered no insight into the productivity (or lack thereof) of Squires or Janine Orie, who as secretaries had no direct responsibility for researching or drafting the judicial decisions generated by Orie Melvin's chambers.

Finally, even to the extent that the monthly reports in question provided some indication of the productivity of Orie Melvin's Superior Court chambers as a whole, the trial court retained broad discretion to exclude the evidence as potentially misleading or confusing to the jury.  *See, e.g.*, *Leahy v. McClain*, 732 A.2d 619, 624 (Pa. Super.), *appeal denied*, 751 A.2d 192 (1999); *Egelkamp v. Egelkamp*, 524 A.2d 501, 504 (Pa. Super. 1987); *Gallegor by Gallegor v. Felder*, 478 A.2d 34, 38 (Pa. Super. 1984).  Without a substantial quantum of additional information, the monthly reports at issue here may have done more to mislead and confuse the jury than to instruct it.  For example, the monthly reports did not reflect the number or complexity of the issues in the cases assigned to Orie Melvin in any relevant time period, and similarly did not show how Orie Melvin's chambers managed its inventory of cases at specific points in time, including, for instance, whether decisions on more complex and/or lengthy cases were deferred until after elections in favor of simpler, more

---

[22]  For example, Degener testified that during election periods "the appeals were still being turned out" because the law clerks "just worked hard" at "getting it done."  N.T., 2/5/2013, at 1491.

straightforward and routine cases.  The monthly reports also set forth only the number of cases circulated and filed during the relevant time periods, but do not specify the length of the individual memoranda and opinions produced or the complexity of the analysis involved in each such decision.  Without this additional foundational information, the monthly reports may have presented a highly misleading representation of the productivity of Orie Melvin's judicial staff at any specific point in time, and thus the trial court was within its discretion to exclude this evidence on this basis.

Because we conclude that the trial court did not abuse its discretion in refusing to admit these monthly reports into evidence, no relief is due on Orie Melvin's eleventh issue on appeal.

## K.  Improper Comments by Trial Judge

For her twelfth issue on appeal, Orie Melvin contends that the trial court deprived her of a fair trial by making the following communications to the jury:

- Expressed personal disbelief that court employees had no set or minimum work hours, N.T., 2/6/2013, at 1719, and after stating 'I don't understand any of this,' proceeded to question the AOPC Human Resource Director himself concerning this issue, *id.* at 1729-30.  Apparently dissatisfied with the answers to his own questions, the court then said: 'I didn't clear anything up.' *Id.* at 1733.

- Offered his personal opinion that time spent performing political tasks was not *de minimis* and the defense strategy of totaling minutes allegedly spent on political tasks was not credible.  N.T.,

2/1/2013, at 1068-69 ('It really is a mischaracterization. It really is. I understand that you are taking down two and three minutes, but there is so much more being done. It's a mischaracterization.').

• Offered his personal opinion that defense strategies were not coherent or persuasive. (**See, e.g.**, N.T., 1/29/2013, at 429-30 ('[T]o be perfectly honest, I have no idea what you are trying to do.'); N.T., 2/5/2013, at 1463 ('I would really like to know where you are going. This is supposed to be cross-examination. Where are we going with this?'); **Id.** at 1466 ('I'm reluctant to tell any lawyer how to try their case, but I need to know where you are going with this.').

• Improperly limited relevant cross-examination of Pavlot concerning a pleading that was filed on her behalf in federal court because the pleading was signed by her lawyer, not Pavlot. N.T., 1/29/2013, at 463-64.

• Assumed that the introduction of false evidence by the prosecutor concerning the 'Women in the Profession' materials was a mistake, N.T., 2/1/2013, at 1237, and reinforced the notion of a mistake in a later colloquy with defense counsel, N.T., 2/4/2013, at 1276-77.

• Insisted that Sasinoski was 'mistaken' when she falsely testified that Orie Melvin took a car allowance from the Superior Court. N.T., 2/12/2013, at 2504-08.

• Made inconsistent hearsay rulings that favored the prosecution. For example, when the defense objected to admission of a hearsay statement by a former Senate staffer, the trial court ruled that the testimony must be allowed in front of jury because 'you don't know it's hearsay until you hear what it is.' N.T., 1/31/2013, at 890. Further, when the Commonwealth sought to elicit testimony from a former Senate staffer concerning advice that she

received, the trial court allowed the testimony because 'somebody told her, it's called state of mind.' N.T., 2/5/2013, at 1675. By contrast, the trial court disallowed legitimate questioning of Judge Joseph Del Sole concerning the basis for his personnel actions concerning Lisa Sasinoski. N.T., 2/7/2013, at 2102.

- Shut down questioning of the Commonwealth's expert concerning judicial staffers completing all of their assigned work by ruling that the question 'was never asked,' N.T., 2/7/2013, at 2071, when in fact each judicial staffer was asked whether all judicial work was completed. N.T., 2/1/2013, at 1215-16; N.T., 2/5/2013, at 1586-87, 1591.

Orie Melvin's Brief at 79-80.

Orie Melvin did not specifically raise any of these issues in her Rule 1925(b) concise statement of issues to be complained of on appeal, and thus, they are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Hairston**, 84 A.3d 657, 672 (Pa. 2014). Moreover, they are waived for lack of argument in Orie Melvin's appellate brief. A judge's remarks to counsel during trial do not warrant reversal unless the remarks so prejudice the jurors against the defendant that "it may reasonably be said [that the remarks] deprived the defendant of a fair and impartial trial."[23]

---

[23] We also note that in its charge to the jury, the trial court advised as follows:

> I have not attempted to indicate my opinion concerning the weight which should be given to any of the evidence, or part of it. I do not want you to think that I have. If during the course of the trial I have asked any questions of the witnesses, you are not to attach any more significance to those

*Commonwealth v. Jones*, 912 A.2d 268, 287 (Pa. 2006) (citing *Commonwealth v. England*, 375 A.2d 1292, 1300 (Pa. 1977)).  In her appellate brief, Orie Melvin fails to develop these claims by detailing the circumstances and context of each trial court statement, or otherwise explaining how each of these statement prejudiced her or deprived her of a fair trial.  Pa. R.A.P. 2119(a); *Commonwealth v. Wilson*, 825 A.2d 710, 715 (Pa. Super. Ct. 2003) (holding waiver results when appellant fails to properly develop issue on appeal) (citing *Commonwealth v. Ellis*, 700 A.2d 948, 957 (Pa. Super. 1997), *appeal denied*, 727 A.2d 127 (Pa. 1998)); *see also Commonwealth v. Miller*, 721 A.2d 1121, 1124 (Pa. Super. 1998) ("We decline to become appellant's counsel.  When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof."); *Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa. Super. 2006), *appeal denied*, 920 A.2d 831 (Pa. 2007); *Commonwealth v. Levanduski*, 907 A.2d 3, 29 (Pa. Super. 2006), *appeal denied*, 919 A.2d 955 (Pa 2007).

---

> questions and answers than to any other questions and answers.  If during the trial I have exhibited what you felt to be annoyance or displeasure towards any witness or any lawyers, or I made any comment or displayed any facial expressions, you are not to assume that I am attempting to lead you to render a particular verdict.

N.T., 2/15/2013, at 2810.

**L. Sufficiency of Evidence**

For her thirteenth issue on appeal, Orie Melvin challenges the sufficiency of the evidence to support her convictions for theft of services, misapplication of entrusted property, and conspiracy to tamper with or fabricate evidence. We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa. Super. 2011), *appeal dismissed*, 54 A.3d 22 (Pa. 2012).

### 1. Theft of Services

18 Pa.C.S.A. § 3926 of the Pennsylvania Criminal Code is entitled "Theft of services." Its subsection (b) provides as follows:

> **(b) Diversion of services.**--A person is guilty of theft if, having control over the disposition of services of others to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto.

18 Pa.C.S.A. § 3926(b). Subsection (c)(2) states that when the value of the services diverted is more than $50, the crime will be graded in accordance with 18 Pa.C.S.A. § 3903. 18 Pa.C.S.A. § 3926(c)(2). 18 Pa.C.S.A. § 3903(a.1) provides that a theft of services with a value in excess of $2,000 constitutes a felony of the third degree. 18 Pa.C.S.A. § 3903(a.1).

With respect to her conviction under Count 1 for diversion of the services of her judicial staff, Orie Melvin directs our attention to the trial testimony of David Kutz ("Kutz"), AOPC's Director of Human Resources, who indicated that judges on the Superior Court have the authority to set office policy for members of their judicial staff, including how many hours the law clerks and secretaries work. N.T., 2/6/2013, at 1704-06. Kutz further testified that law clerks and secretaries did not have to fill out time sheets to get paid. *Id.* at 1727. Based upon this testimony, Orie Melvin contends that she was "vested with complete discretion to direct the work of her staff and secretaries" and that there was "no requirement that those

employees devote any particular number of hours to their judicial assignments." Orie Melvin's Brief at 82.

We cannot agree that Kutz's testimony precluded a finding that Orie Melvin diverted services within the meaning of subsection 3925(b). At most, Kutz's testimony established that Superior Court judges have the discretion to set office policy and the number of hours per week that employees are expected to work – in other words, to prescribe how and in what manner the ***judicial functions*** of their office are carried out. This in no way leads to a conclusion that Superior Court judges have any authority to divert the services of judicial employees ***to their own personal benefit***.

No judicial employee testified that he or she performed political services on a volunteer basis. For example, Sasinoski testified that she performed political tasks for Orie Melvin's campaign so that she could keep her job, even though she knew that doing so was wrong. N.T., 2/1/2013, at 1105. Degener also testified that he thought that doing political work was wrong, but that Orie Melvin was his supervisor and he did not believe that objecting to doing the work would "stop it." ***Id.*** at 1491, 1497. Squires testified that the political work she did was outside her "judicially required responsibilities," but that she performed the political tasks assigned to her because "it was given to me by [Janine Orie] to complete during my workday." ***Id.*** at 1605-06.

With respect to her conviction under Count 3 for diversion of the services of Jane Orie's legislative staff, Orie Melvin claims that the Commonwealth offered no evidence to prove that she had control over the services of those employees, and that no legislative employee testified that Orie Melvin directed them to perform any political work on her behalf. Orie Melvin's Brief at 83.

In rejecting this argument, the trial court noted that numerous members of Jane Orie's legislative staff testified that they performed a substantial quantity of political work on Orie Melvin's political campaigns. Trial Court Opinion, 9/12/2013, at 22. The certified record supports this finding. In this regard, Pavlot testified that that she received numerous directives to perform political activity from both Jane Orie and Janine Orie, and that Jane Orie specifically advised her any order she received from either Janine Orie and/or Orie Melvin was to be treated as an order directly from her:

> Q. Why would you take orders from either [Janine Orie or Orie Melvin]?
>
> A. Because [Jane Orie] told me, she told me from the beginning, she said, look, if either of my sisters, Janine or Joan, ever give you a directive or a request, whatever it might be, you need to follow that as though I were telling you to do that.
>
> Q. As a practical matter, did you receive requests from either [Janine Orie or Orie Melvin] that were political or campaign related?

A.   Yes sir, I did.

N.T., 1/28/2013, at 199.

Furthermore, on appeal Orie Melvin does not challenge the sufficiency of the evidence in support of her conviction under Count 4 for conspiring with Jane Orie and Janine Orie to divert the services of Jane Orie's legislative staff to her political campaigns.  Accordingly, even if Orie Melvin did not herself direct members of Jane Orie's legislative staff to perform political tasks on her behalf, she is nevertheless responsible for all of the acts of both Janine Orie and Jane Orie in doing so.  ***See, e.g.***, ***Commonwealth v. Murphy***, 795 A.2d 1025, 1038 (Pa. Super. 2002) ("Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy."), *affirmed*, 844 A.2d 1228 (Pa. 2004).

## 2.  Misapplication of Entrusted Property

Orie Melvin next challenges the sufficiency of the evidence to support her conviction under Count 5 for misapplication of entrusted property.  18 Pa.C.S.A. § 4113(a), entitled "Misapplication of entrusted property and property of government or financial institution," provides as follows:

> (a) Offense defined.--A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner

> which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.

18 Pa.C.S.A. § 4113(a). Subsection (b) provides that the offense is a misdemeanor of the second degree if the amount involved exceeds $50, and a misdemeanor of the third degree if the amount involved does not exceed $50.[24] 18 Pa.C.S.A. § 4113(b).

The trial court found that the Commonwealth had introduced sufficient evidence to support this conviction based upon testimony that Orie Melvin, either directly or through others at her direction (including Janine Orie), had used Superior Court office facilities and office equipment for political campaign activities. Trial Court Opinion, 9/12/2013, at 24-25. On appeal, Orie Melvin contends that the Commonwealth did not introduce any evidence to prove that she applied or disposed of entrusted property "in a manner which was unlawful and involved substantial risk of loss or detriment to the owner of the property." Orie Melvin's Brief at 84.

We conclude that this issue has not been preserved for appellate review. In her statement of errors complained of on appeal, Orie Melvin

---

[24] Orie Melvin's conviction under this provision was graded as a second-degree felony, despite the apparent absence of any evidence of record that the value of the amount involved exceeded $50. Order of Sentence, 5/7/2013, at 2 (identifying the conviction as an "M2"). Because Orie Melvin has not raised this issue on appeal, however, it is waived. **See, e.g.**, **Commonwealth v. Smith**, 17 A.3d 873, 903 (Pa. 2011), *cert. denied*, 133 S.Ct. 24 (U.S. 2012).

states only that there was insufficient evidence to support her conviction under subsection 4113(a), but does not identify the specific element of the offense for which insufficient evidence was allegedly presented. As a result, the trial court did not address in its Rule 1925(a) written opinion the specific issue now presented. For these reasons, we find the issue to be waived.

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. The instant 1925(b) statement simply does not specify the allegedly unproven elements. Therefore, the sufficiency issue is waived.

*Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008). Although the Commonwealth did not object to this defect in Orie Melvin's Rule 1925(b) concise statement, we observed in *Williams* that such a failure is of "no moment, because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument …." *Id.*

### 3. Conspiracy to Tamper With or Fabricate Evidence

Finally, Orie Melvin claims that the Commonwealth did not introduce sufficient evidence to support her conviction under Count 7 for conspiracy to tamper with or fabricate evidence. To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1)

entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. **Commonwealth v. Hennigan**, 753 A.2d 245, 253 (Pa. Super. 2000). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." **Id.** With respect to the agreement element, we have explained:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

**Commonwealth v. McCall**, 911 A.2d 992, 996-97 (Pa. Super. 2006) (quoting **Commonwealth v. Johnson**, 719 A.2d 778, 784–85 (Pa. Super. 1998) (*en banc*)).

Orie Melvin argues that there was no proof of either an agreement with Pavlot and/or Jane Orie to tamper with evidence, or that she intended

to facilitate or promote the crime of tampering. Orie Melvin's Brief at 85. We disagree. Pavlot testified that after she and others in Jane Orie's legislative office became aware that a student intern (Jennifer Knapp Rioja) had reported improprieties to the Allegheny County District Attorney's office, she and Dott removed two boxes of documents from the office file drawers. N.T., 1/29/2013, at 330. When they were removing the boxes from the office, she thought she saw flashes from a camera, and immediately contacted Jane Orie to report that she believed someone had taken pictures of the removal of the boxes. *Id.* at 331. Pavlot testified that she took the boxes to her basement and planned to give them to her attorney, but before she could do so she received a telephone call from Jane Orie and Orie Melvin, which she described as follows:

> I received a phone call from Jane Orie and she said, Jamie, this is Jane, I have [Orie Melvin] on the phone. [Orie Melvin] said, hi, Jamie. I said, hi, Judge. And they said to me, both of them had identified themselves and said to me, Jamie, what's in those boxes. And I said, well, there are a number of things in the boxes. What are in the files? I said it appears to be some expense reports, it appears to be some contributors lists, looks like some political literature is in there, some other miscellaneous things are in there.
>
> And [Jane Orie] said, Jamie, anything that's political of mine, I want you to pull those files out of those boxes. And [Orie Melvin] said, Jamie, anything political of mine, I want you to pull them out of those boxes. And I said, okay. But I didn't do it.

*Id.* at 333-34.

Viewing Pavlot's testimony in the light most favorable to the Commonwealth as the verdict winner, as our standard of review requires, there is sufficient evidence to support a conspiracy between Orie Melvin, Jane Orie, and Pavlot to tamper with evidence. Orie Melvin argues that phone records do not establish that such a telephone call was ever made, but it is not for this Court to pass upon Pavlot's credibility. **Estepp**, 17 A.3d at 943–44. An argument regarding the credibility of a witness's testimony "goes to the weight of the evidence, not the sufficiency of the evidence." **Commonwealth v. Gibbs**, 981 A.2d 274, 281-82 (Pa. Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010). Orie Melvin has not asserted a weight of the evidence claim.

## M. Accomplice Liability Jury Instructions After Commencement of Jury Deliberations

For her fourteenth issue on appeal, Orie Melvin claims that the trial court erred in instructing the jury on the topic of accomplice liability after closing arguments had been completed and the jury had begun its deliberations. Orie Melvin's Brief a 85. For the reasons that follow, we conclude that the trial court's supplemental instruction to the jury violated Rule 647(A) of the Pennsylvania Rules of Criminal Procedure. We further conclude, however, that Orie Melvin has not demonstrated actual prejudice resulting from this violation to be entitled to any relief on appeal.

On February 14, 2013, the trial court conducted a charging conference, at which time it provided the parties with a draft of its proposed

charge to the jury and ruled on various requests for additional instructions. N.T., 2/14/2013, at 2679-2703. During this charging conference, the Commonwealth did not request a charge on "accomplice liability," ask that the term be defined, or otherwise object to the absence of a charge or definition. During its charge to the jury, the trial court used the word "accomplice" four times, all while summarizing the charges in the informations filed against the co-defendants. The first three references took place as the trial court reviewed the charges in the information filed against Orie Melvin:

> Count 1: Theft of Services. The actor, and when I use the term actor, I'm talking about [Orie Melvin]. It's a euphemism the legislature came up with. Having control over the disposition of services of others, namely actor's Superior Court Judicial staff, which she personally and through Janine Orie and [Jane Orie], ***accomplices pursuant to statute***, utilized to facilitate and promote the actor's political campaign for higher judicial office during the election cycles in both 2003 and 2009.…

> Count 3: Theft of Services. The actor, having control over the disposition of services of another, namely, the Senatorial staff of [Jane Orie], which she personally and through Janine Orie and [Jane Orie], ***accomplices pursuant to statute***, utilized to facilitate and promote the actor's political campaign for higher Judicial office during the election cycles in both 2003 and 2009.…

> Count 5: Misapplication of Entrusted Property or Property of Government or Financial Institutions. The actor applied or disposed of property valued at more than $50, namely, personally and through Janine Orie, ***an accomplice pursuant to statute***,

> used her Superior Court office facilities and office equipment to facilitate and promote the actor's political campaign activities in her bid for higher judicial office in both 2003 and 2009....

N.T., 2/15/2013, at 2776-79.

The fourth reference to "accomplice" occurred as the trial court reviewed the charges in the 2010 information filed against Janine Orie at docket number CP-02-CR-0010286:

> Count 2: Theft of Services. [Janine Orie], **as an accomplice pursuant to the statute**, having control over the disposition of the services of others, namely, certain members of the legislative staff of Senator [Jane Orie], did knowingly direct or cause to be directed those employees of the Commonwealth of Pennsylvania … to engage in political fundraising and/or political campaign work, … on behalf of [Orie Melvin's] 2009 Judicial campaign, knowingly diverting said services to the benefit of another not entitled thereto.

*Id.* at 2785.[25]

After the trial court completed its charge, the jury began deliberations and later that day it posed a question concerning "the definitions as to what [the trial court] read to us." N.T., 2/15/2013, at 2817.

THE COURT: What is it you want defined, Mr. [Foreman]?

---

[25] The statute referenced in the trial court's phrase "an accomplice pursuant to statute" is 18 Pa.C.S.A. § 306, entitled "Liability for conduct of another; complicity." Section 306 of the Criminal Code provides generally that a person "is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both," and defines and explains the parameters of accomplice liability. 18 Pa.C.S.A. § 306.

FOREMAN: What we are asking is to have the definitions as to what you read to us. We all have the counts that we wrote down, but what we want is the definitions, the one through four which you read to us.

A JUROR: It was the criteria that you read under each, in order to meet this, number one, number two, number three.

THE COURT: You want the crimes?

THE JURY: Yes.

THE COURT: Here is what I'm going to do. I'll will [*sic*] basically reproduce what I gave you. I'll send that up, along with the Informations.

*Id.*

In the discussion between counsel and the trial court regarding how to respond to the jury's inquiry,[26] counsel for the Commonwealth for the first time asked the trial court to offer an expanded jury instruction to include a charge on accomplice liability.

MR. CLAUS: Judge, I have a notice that accomplice was obviously read by you as part of the charges. That is part of the standard charging, and I thought if that's what —

THE COURT: Well, you are little late, Mr. Claus, don't you think?

MR. CLAUS: Well—

---

[26] After a review of the Pennsylvania Rules of Criminal Procedure, including in particular Rule 646(C)(3), the trial court reconsidered its initial decision to provide the jury with the informations. N.T., 2/19/2013, at 2837. Instead, the trial court prepared a handout for the jury, agreeable to the parties, listing the elements and defenses for each charge. *Id.* at 2841.

THE COURT:    Yeah, I do.

N.T., 2/15/2013, at 2820.

Although the trial court initially indicated that the request for an instruction on accomplice liability was too late, it agreed to consider it over the holiday weekend.  On the following Tuesday morning, the trial court stated that it had reconsidered and would read to the jury an instruction on accomplice liability provided in writing by the Commonwealth, to which counsel for Orie Melvin immediately objected[27]:

> THE COURT:    All right. Mr. Claus would like the charge on accomplice given, and I don't have a problem with that.
>
> MR. CASEY:    I would object to Your Honor doing that.  I think its prejudicial to the defendant. He had the opportunity to take exceptions on Friday to the charge, and did not take an exception. And I understand that the Court —
>
> THE COURT:    Mr. Casey, a song written I heard a long time ago that Kenny Rogers sang, To know when to hold them, and know when to fold them. I'm going to let this go out with the jury. I'm going to give them the exact same thing you gave to me. And I'm also going to charge them on accomplice liability.
>
> MR. CASEY:    I would take exception to accomplice liability.
>
> THE COURT:    You can take all the exception you want.
>
> MR. CASEY:    Thank you.

---

[27]  Counsel objected to the giving of the charge itself, but not to any of the specific language contained therein.

N.T., 2/19/2013, at 2837-38. The trial court then instructed the jury as follows:

> I used the term, and you will see in the document that you get, of accomplice, and I did not define it for you. There is a way that one defendant can be proven liable for the conduct of another person or persons, and that is when the defendant is an accomplice of the person who actually commits the crime at issue. To be an accomplice, a person does not have to agree to help someone else. The person is an accomplice if he or she on his or her own acts to help the other person commit a crime.
>
> More specifically, you may find a defendant is an accomplice of another in this case if the following two elements are proven beyond a reasonable doubt.
>
> One, that the defendant had the intent of promoting or facilitating the commission of the offense; and two, that the defendant solicits, encourages, requests the other person to commit it, or aids the other person in planning or committing it. Accomplice liability must be assessed separately for each crime charged if two or more crimes are committed. The defendant before you is being charged as an accomplice for each of those crimes. He or she may not be found liable unless it is shown that each individual crime, that this defendant had the intent of promoting the specific crime and then solicited, encouraged, requested the other person to commit it, or aided the other person in planning or committing it.
>
> In other words, you must decide whether the prosecution proved beyond a reasonable doubt that this defendant was an accomplice for the first crime or the second crime, et cetera.

It is important to understand that a person is not an accomplice merely because he or she is present when a crime is committed, or knows that a crime is being committed. To be an accomplice, the defendant must specifically intend to help bring about the crime by assisting another in its commission.

A person who is an accomplice will not be responsible for a crime if and only if the person[,] before the other person commits the crime[,] either stops his or her own effort to promote or facilitate the commission of a crime, and either wholly deprives his or her previous efforts in effectiveness in the commission of the crime, or gives timely warnings to law enforcement.

N.T., 2/19/2013, at 2842-44.[28]

---

[28] In Janine Orie's case only, on February 21, 2013, two days after the supplemental charge, the jury asked two questions regarding accomplice liability, namely "can we get a more defined explanation of 'accomplice?'" and "[c]an it be applied to any of the charges?" The trial court then instructed the jury as follows:

Ladies and gentlemen of the jury, to be an accomplice, a person does not have to agree to help someone else. The person is an accomplice if he or she on his or her own acts to help the other person commit the crime knowingly.

More specifically, you may find the defendant is an accomplice of another in this case if the following two elements are proven beyond a reasonable doubt. A, that the defendant had the intent of promoting or facilitating the commission of the offense of theft of services and, two, that the defendant solicits, commands, encourages, requests the other person to commit it or aids, agrees to aid or attempts to aid the other person in planning or committing it.

Rule 647(A) provides as follows:

> (A) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.

Pa.R.Crim.P. 647(A).

Rule 647(A)[29] was amended in 1985 to change prior practice, pursuant to which the trial court did not rule on proposed jury instructions until after counsel for the parties had completed their closing arguments to the jury. As this Court recognized in **Commonwealth v. Hendricks**, 546 A.2d 79 (Pa. Super. 1988), *appeal denied*, 559 A.2d 35 (Pa. 1989),

> The difference in the procedure following the 1986 amendment is that the court now is **required** to rule on proposed written jury instructions before closing arguments and charging the jury whereas

---

> It is important to understand that a person is not an accomplice merely because he or she is present when a crime is committed or knows that a crime is being committed. To be an accomplice, the defendant must specifically intend to help bring about the crime by assisting another in its commission.

N.T., 2/21/2013, at 2852-53.

[29] On March 1, 2000 (effective July 1, 1985), Rule 1119(A) was renumbered as Rule 647(A). **See** Pa.R.Crim.P. 647 Credits.

> under the old procedure the court ruled on the requested jury instructions *after* closing arguments and the charge to jury.

*Id.* at 81 (emphasis in original). Noting that Rule 647(A) effectively mirrors Rule 30 of the Federal Rules of Criminal Procedure, this Court indicated that under both rules, the trial court "is required to rule on all proposed jury instructions prior to charging the jury and closing summations." *Id.* We further recognized that "[t]he purpose of this rule is to require the judge to inform [counsel] in a fair way what the charge is going to be, so that they may intelligently argue the case to jury." *Id.* (citing *United States v. Wander*, 601 F.2d 1251, 1262 (3d Cir. 1979)); *see also Commonwealth v. Alston*, 748 A.2d 677, 679 (Pa. Super.) (same), *appeal denied*, 795 A.2d 970 (Pa. 2000). At bottom, the rule requires the trial court to provide the parties with adequate notice of the instruction before closing argument, and the rule is plainly violated when the trial court presents a new theory of liability, or otherwise materially modifies the original instructions, after closing arguments have been completed. *See generally United States v. Smith*, 789 F.2d 196, 202 (3d Cir. 1986).

The trial court's decision to issue a supplemental instruction to the jury on accomplice liability in this case after closing arguments violated Rule 647(A). As indicated hereinabove, at no time prior to closing arguments did the trial court advise counsel that it intended to instruct the jury on the specifics of accomplice liability, and the Commonwealth did not request a

charge on accomplice liability or object to the absence of such a charge. It was only after closing arguments and after the jury began deliberating that the Commonwealth first requested that the trial court instruct the jury, through a supplemental charge, that Orie Melvin could be convicted as an accomplice.

On appeal, the Commonwealth contends that the initial charge contained an instruction on accomplice liability and that, in any event, the jury knew that Orie Melvin could be found liable as an accomplice. Commonwealth's Brief at 90 ("In charging the jury Judge Nauhaus instructed the jury that [Orie Melvin] had been charged as an accomplice but did not define the term."). *id.* at 92 ("Accomplice liability had always been an issue in the case and the jury had been told that they could find [Orie Melvin] guilty as an accomplice."). We disagree. First, the trial court's initial charge did not instruct the jury that Orie Melvin was subject to accomplice liability. As set forth hereinabove, in summarizing the charges in the informations filed against Orie Melvin and Janine Orie during its charge to the jury, the trial court referred to "accomplice" on four occasions. A review of those four references reflects that on *no* occasion did the trial court refer to Orie Melvin as an accomplice. To the contrary, in every such reference, the trial court referred to either or both of her sisters, Janine Orie and Jane Orie, as the accomplices of Orie Melvin. The contention that Janine Orie and Jane Orie were the accomplices of Orie

Melvin and/or that Orie Melvin may have acted through accomplices to commit various crimes does not, of course, make Orie Melvin herself an accomplice. At no time did the trial court ever refer to Orie Melvin as an accomplice of her sisters (or anyone else).

Second, it is simply untrue that Orie Melvin was charged as an accomplice or that jury knew Orie Melvin could be found liable as an accomplice. In its August 14, 2012 information filed against Orie Melvin, the Commonwealth did not charge her as an accomplice in any of the seven listed counts. Information, 8/14/2012, at 1-3. Similarly, at trial the Commonwealth never referred to Orie Melvin as an accomplice in either its opening or closing arguments to the jury, and on appeal it points us to no evidence that it introduced at trial to establish her status as an accomplice.[30] Conversely, Orie Melvin does not suggest or argue that there was no evidence to support her conviction as an accomplice; she only argues that she was prejudiced by the timing of the charge.

---

[30] In **Commonwealth v. Spots**, 716 A.2d 580 (Pa.), *cert. denied*, 526 U.S. 499 (1998), our Supreme Court held that it was not error for the trial court to instruct the jury on accomplice liability even though the defendant had been charged only as a principle, "as long as the defendant is put on notice that the Commonwealth may pursue theories of liability that link the defendant and another in the commission of crimes." **Id.** at 588; **see also Commonwealth v. Smith**, 482 A.2d 1124, 1126 (Pa. Super. 1984) (despite being charged only as principal, defendant had sufficient notice of potential for accomplice liability theory, and trial court properly instructed jury on accomplice liability); **Commonwealth v. McDuffie**, 466 A.2d 660 (Pa. Super. 1983) "[T]he record before us shows that appellant should have been aware that liability might be imposed on him for the acts and conduct of [another].").

For these reasons, the trial court's supplemental charge on accomplice liability advised the jury, **_for the first time_**, that Orie Melvin could be convicted on a new theory of criminal liability (accomplice liability). Because this supplemental charge to the jury occurred after Orie Melvin's closing argument, it violated Rule 647(A).

The Commonwealth also cites this Court's decision in **_Commonwealth v. Kidd_**, 380 A.2d 416 (Pa. Super. 1977), for the proposition that where "a jury submits on its own motion a question to the court indicating confusion or a request for clarification, the court may properly clarify the jury's doubt or confusion." **_Id._** at 419 (citing **_Commonwealth v. Peterman_**, 244 A.2d 723 (Pa. 1968)); **_see also_** Pa.R.Crim.P. 647(C) ("After the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties …."). In this case, however, the trial court's supplemental instruction cannot be categorized as an attempt to clarify any "doubt or confusion" expressed by the jury. To the contrary, the jury made clear that it wanted to be informed again on the elements of the crimes charged, and in response the trial court provided the jury with exactly that, namely a handout with a list of the elements of each of the crimes against the co-defendants and their corresponding defenses. At no time did the jury request any information (definitional or otherwise) about accomplice liability, and the definition of accomplice was not an element of any crime

charged in this case, as the trial court acknowledged. N.T., 2/15/2013, at 2821 (originally advising the prosecutor that the "definition of accomplice is not an element of the crime" and that as a result it would not be included in the handout to be provided to the jury).

A violation of Rule 647(A), however, does not *ipso facto* mandate a reversal for a new trial. In **Alston**, this Court reviewed its prior decision in **Hendricks** before concluding that "prejudice is indeed a mandatory component" of a Rule 647(A) inquiry.

> [T]he **Hendricks** court quoted federal case law when it stated that '[f]ailure of the court to comply with Rule 30 requires the granting of a new trial if "counsel's closing argument was prejudicially affected thereby."' [**Hendricks**, 546 A.2d at 81] (quoting **United States v. McCown**, 711 F.2d 1441, 1452 (9th Cir. 1983)). Further, the **Hendricks** court analyzed in great detail the jury instruction requests made by counsel and the closing argument made to the jury, drawing a nexus between the court's error and counsel's specific statements. Finally, the **Hendricks** holding is quite clear: 'Accordingly, we conclude that the court's failure to inform counsel of its ruling on the requested points for charge prior to closing arguments and the jury instruction, was prejudicial to appellant's defense and warrants that a new trial be granted.' **Id.** at 83. In light of all of these factors, we hold that Rule [647] relief is not warranted unless prejudice has been established.

**Alston**, 748 A.2d at 679.[31] Federal courts have likewise held that a "violation of Rule 30 requires reversal only when the defendant can show

---

[31] We reject the trial court's contention that no prejudice resulted because the jury had only been deliberating for a short time before receiving the

actual prejudice." **United States v. Benson**, 2006 WL 2520612, at *14 (E.D. Pa. 2006) (quoting **United States v. Horton**, 921 F.2d 540, 547 (4th Cir. 1990)). In **United States v. Gaskins**, 849 F.2d 454 (9th Cir. 1988), the federal court framed the question as "whether the district judge's decision to give the aiding and abetting instruction during jury deliberations, after initially stating at the Rule 30 hearing that he would not, unfairly prevented Gaskin's counsel from arguing against an aiding and abetting theory to the jury." **Id.** at 460.

In accordance with this standard, Orie Melvin contends that she was prejudiced because she relied upon the absence of an accomplice liability instruction in preparing for closing argument. Orie Melvin's Brief at 89-90. Specifically, she argues that "[h]ad the defense known that the trial court would reverse course and introduce the concept of accomplice liability after closing arguments concluded," her counsel "would have directly addressed the issue in the closing." **Id.** at 90.

---

supplemental instruction. Trial Court Opinion, 9/12/2013, at 28 ("Any harm that occurred was minimal and not prejudicial since the jury only deliberated a short time before this [c]ourt gave the expanded instruction of accomplice liability."). As **Hendricks** makes clear, the potentially prejudicial aspect of a trial court's decision to provide additional instructions after closing arguments is that it interferes with counsel's ability to tailor his or her closing arguments to the trial court's actual jury charge. **Hendricks**, 546 A.2d at 81 ("It [is] the court's failure to advise counsel of its ruling prior to closing argument, not the soundness of that ruling, which violate[s] Rule 30 and prejudicially affect[s] counsel's summation.") (quoting **Wright v. United States**, 339 F.2d 578, 580 (9th Cir. 1964)).

Before proceeding to consider Orie Melvin's contention that she suffered actual prejudice resulting from the trial court's clear error, we must note that Orie Melvin arguably waived this claim by failing to request the opportunity to offer additional argument to the jury to address the supplemental charge after being informed that it would be given. Although this issue has not been discussed by any Pennsylvania appellate court in connection with Rule 647(A), federal courts have held that prejudice resulting from violations of Federal Rule of Criminal Procedure 30 may in some cases be ameliorated or eliminated by permitting counsel the opportunity for supplemental argument to the jury. *See, e.g.*, *United States v. Fontenot*, 14 F.3d 1364, 1368 (9th Cir. 1994) (when "a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should give counsel time for additional argument") (quoting *Horton*, 921 F.2d at 547)); *United States v. Civelli*, 883 F.2d 191, 196 (2d Cir. 1989) ("[T]he principles that underlie Rule 30 may very well require that the district court allow further argument after an instruction has been given."); *Gaskins*, 849 F.2d at 457 (new trial granted for violation of Rule 30 after the district court denied defense counsel's request to reopen closing argument); *Vazquez v. Adams*, 2011 WL 3420644, at *6 (C.D. Cal. June 27, 2011), *report and recommendation adopted*, 2011 WL 3419562 (C.D. Cal. Aug. 1, 2011) (same); *but see Cruz v. State*, 963 A.2d 1184, 1192 (Maryland 2009) ("We are not persuaded

that a supplemental closing argument would have cured the problem created by the court's eleventh hour insertion of this new theory of culpability."). Because neither party raised or briefed the waiver issue, and the novelty under Pennsylvania law of a violation of Rule 647(A), however, we will proceed to consider Orie Melvin's claim of actual prejudice on its merits.

On its merits, we must conclude that Orie Melvin has not established sufficient prejudice to entitle her to a new trial. While Orie Melvin contends, in the most general terms, that her counsel would have "directly addressed" accomplice liability in the closing argument, she offers no explication as to what the contents of such an argument would have included or what evidence could have been referenced in support thereof. Without so stating, she is essentially arguing presumed prejudice. As such, Orie Melvin has not provided this Court with any basis to evaluate the degree (if any) of any actual prejudice resulting from the trial court's error.

Moreover, based upon our review of Orie Melvin's actual closing argument to the jury, we are unconvinced that her counsel would have "directly addressed" accomplice liability if the trial court had timely instructed the jury. In Orie Melvin's closing argument, her counsel, *inter alia*, attacked the credibility of key witnesses (including in particular Sasinoski and Pavlot), emphasized the productivity of her judicial staff during her tenure on the Superior Court (including during 2003 and 2009),

and reviewed the testimony of the paid professionals (unconnected to her judicial staff) who managed her political campaigns. N.T., 2/15/2013, 2705-27. Counsel began by describing Orie Melvin as a "courageous and honorable woman" and ended by insisting that she "got the work done, served her job, and ran her campaign with political professionals, and she paid for it with private funds." *Id.*

Importantly, the dominant theme of her closing argument was not that she bore no responsibility for any wrongdoing, but rather that *no wrongdoing occurred*. As such, even with respect to the three counts that alleged that she acted through accomplices (Counts 1, 3, and 5), her counsel never directly addressed the Commonwealth's specific charge that she diverted services "personally" and/or through her accomplices (Jane Orie and Janine Orie). Also, counsel did not directly address the charge that Orie Melvin conspired with others to divert services because it was her contention that no services were ever diverted. The certified record simply provides no basis on which to conclude that Orie Melvin suffered any prejudice as a result of the late instruction.

Accordingly, in the absence of any showing of prejudice, we decline to grant Orie Melvin any relief on this issue.

## N. Letters of Apology and Letters of Apology Inscribed on Photograph in Handcuffs

For her fifteenth issue on appeal, Orie Melvin raises three arguments related to the portion of her sentence requiring her to write letters of

apology to her judicial staff, and to the judges of the courts of common pleas and intermediate appellate courts, and the Justices of the Supreme Court of Pennsylvania on a photograph of her in handcuffs. First, she contends that this portion of her sentence violates her rights against self-incrimination under the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Second, she claims that this portion of her sentence is not a lawful component of a criminal sentence under 42 Pa.C.S.A. § 9721. Third, she argues that the requirement that she write apology letters is not a part of her sentence because it was not included in the written sentencing order. We address these contentions in turn.

### 1. Constitutional Violation Claims

First, in **Commonwealth v. Melvin**, 79 A.3d 1195 (Pa. Super. 2013), this Court granted Orie Melvin's request for a stay from the apology letters requirement on constitutional grounds, indicating that said stay would remain in effect "until such time as her direct appeal in this Court has been decided" and "pending final resolution by this Court of her claims of illegality of sentence." **Id.** at 1202, 1203. Apparently, she now seeks to extend the stay indefinitely, arguing that "[a]s long as Orie Melvin continues to assert her innocence, she cannot be required to apologize." Orie Melvin's Brief at 95. We cannot agree. In **Melvin**, this Court reviewed applicable decisions of our Supreme Court and determined that the requirement that

she write apology letters violated her right against self-incrimination during the pendency of her direct appeal. *Id.* at 1203. We are aware of no federal or Pennsylvania state law, and Orie Melvin has not cited to any, that supports the notion that the right against self-incrimination extends beyond the pendency of a direct appeal. As a result, we must conclude that Orie Melvin is not entitled to relief from the apology letters requirement on constitutional grounds after her direct appeal has been decided.

## 2. Legality of Sentencing Under the Sentencing Code

Second, Orie Melvin posits that the requirement that she write the apology letters is illegal because it is not a lawful component of a criminal sentence under 42 Pa.C.S.A. § 9721. Whether the trial court had the power to impose the challenged condition under the Sentencing Code concerns the legality of sentence. *Commonwealth v. Hall*, 80 A.3d 1204, 1211 (Pa. 2013); *Commonwealth v. Robinson*, 931 A.2d 15, 21 (Pa. Super. 2007) (*en banc*). Challenges to an illegal sentence cannot be waived[32] and may be reviewed *sua sponte* by this Court. *Commonwealth v. Mears*, 972 A.2d 1210, 1211 (Pa. Super. 2009); *Commonwealth v. Merolla*, 909 A.2d 337, 347 (Pa. Super. 2006).

---

[32] In its Rule 1925(a) written opinion, the trial court contends that Orie Melvin cannot challenge the apology letter requirement on appeal because she did not file a post-sentence motion on this issue. Trial Court Opinion, 9/12/2013, at 31. Because challenges to the legality of sentence, however, are non-waivable, *Commonwealth v. Berry*, 877 A.2d 479, 486 (Pa. Super. 2005), *appeal denied*, 917 A.2d 844 (Pa. 2007), no post-trial motion was necessary to preserve the issue for appeal.

The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

*Commonwealth v. Leverette*, 911 A.2d 998, 1001–02 (Pa. Super. 2006) (citations omitted); *Commonwealth v. Williams*, 868 A.2d 529, 532 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1059 (Pa. 2005); *Commonwealth v. Zampier*, 952 A.2d 1179, 1181 (Pa. Super. 2008). A challenge to the legality of a sentence "is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it handed down. ... A trial court ordinarily has jurisdiction to impose any sentence which is within the range of punishments which the legislature has authorized for the defendant's crimes." *Commonwealth v. Cappellini*, 690 A.2d 1220, 1226 (Pa. Super. 1997) (quoting *Commonwealth v. Catanch*, 3581 A.2d 226, 228 (Pa. Super. 1990)).

42 Pa.C.S.A. § 9721(a) provides trial courts with seven alternative forms of criminal sentences:

**(a) General rule.**--In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2)  A determination of guilt without further penalty.

(3)  Partial confinement.

(4)  Total confinement.

(5)  A fine.

(6)  County intermediate punishment.

(7)  State intermediate punishment.

42 Pa.C.S.A. § 9721(a).  The trial court sentenced Orie Melvin to county intermediate punishment.  This Court has stated that the intent of the legislature in adopting intermediate punishment programs was to give trial courts another sentencing option which "would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of nonviolent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem." *Commonwealth v. Poncala*, 915 A.2d 97, 101 (Pa. Super. 2006) (citing *Williams,* 868 A.2d at 534), *appeal denied*, 932 A.2d 1287 (Pa. 2007).

When imposing a county intermediate punishment, the trial court may attach specified conditions to the sentence, as set forth in 42 Pa.C.S.A. § 9763(b):

> **(b) Conditions generally**.—The court may attach any of the following conditions upon the defendant as it deems necessary.

(1) To meet family responsibilities.

(2) To be devoted to a specific occupation or employment.

(3) To participate in a public or nonprofit community service program.

(4) To undergo individual or family counseling.

(5) To undergo available medical or psychiatric treatment or to enter and remain in a specified institution, when required for that purpose.

(6) To attend educational or vocational training programs.

(7) To attend or reside in a rehabilitative facility or other intermediate punishment program.

(8) To refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.

(9) To not possess a firearm or other dangerous weapon unless granted written permission.

(10) To make restitution of the fruits of the crime or to make reparations, in an affordable amount, for the loss or damage caused by the crime.

(11) To be subject to intensive supervision while remaining within the jurisdiction of the court and to notify the court or designated person of any change in address or employment.

(12) To report as directed to the court or the designated person and to permit the designated person to visit the defendant's home.

(13) To pay a fine.

(14) To participate in drug or alcohol screening and treatment programs, including outpatient and inpatient programs.

(15) To do other things reasonably related to rehabilitation.

(16) To remain within the premises of the defendant's residence during the hours designated by the court.

(17) To be subject to electronic monitoring.

42 Pa.C.S.A. § 9763(b).

None of the conditions in section 9763(b) provides that the defendant may be compelled to write letters of apology or to require the defendant be photographed in handcuffs for distribution to a designated group of people (here, members of the Pennsylvania judiciary). We therefore we must determine whether either of the conditions imposed by the trial court fall within the "catchall" provision in subsection (15), namely "[t]o do other things reasonably related to rehabilitation." *Id.* at § 9763(b)(15).

In fashioning a sentence, we have acknowledged that trial courts are vested with "great, but not unfettered" discretion. *Commonwealth v. Thier*, 663 A.2d 225, 229 (Pa. Super.), *appeal denied*, 670 A.2d 643 (Pa.

1995). In **Thier**, for example, this Court ruled that imposing as a condition of probation "reasonably related to the rehabilitation of the defendant"[33] a prohibition against engaging in a specific business for one year exceeded the trial court's statutory authority under the Sentencing Code. **Id.** More recently, our Supreme Court ruled that a trial court could not impose a condition that the defendant pay a monthly sum to the children of the victim of his crime, either for purposes of restitution or rehabilitation. **Hall**, 80 A.3d at 1212-18.

The scope of this catchall provision in subsection 9763(b)(15) is undefined, and thus we must apply basic principles of statutory interpretation to ascertain and effectuate the intention of the legislature. The Statutory Construction Act requires penal provisions of statutes to be strictly construed, 1 Pa.C.S.A. § 1928(b)(1), and thus "such language should be interpreted in the light most favorable to the accused." **Commonwealth v. Huggins**, 836 A.2d 862, 868 n.5 (Pa. 2003) (quoting **Commonwealth v. Booth**, 766 A.2d 843, 846 (Pa. 2001)), *cert. denied*, 541 U.S. 1012 (2004); **Hall**, 80 A.3d at 1212.

Moreover,

> When possible, every statute should be construed to give effect to all its provisions. Courts must read

---

[33] 42 Pa.C.S.A. § 9754(c)(13) provides that a sentencing court may require the defendant to "satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." 42 Pa.C.S.A. § 9754(c)(13).

and evaluate each section of a statute in the context of, and with reference to, the other sections of the statute, because there is a presumption that the legislature intended the entire statute to be operative and effective.

*Poncala*, 915 A.2d at 104. In so doing, we apply two closely related principles of interpretation. *Noscitur a sociis* ("it is known by its associates"), provides that the meaning of a word or phrase may be determined by reference to the provisions immediately surrounding it. BLACK'S LAW DICTIONARY, 1087 (8th ed. 2004); *Mountain Village v. Bd. of Supervisors of Longswamp Twp.*, 874 A.2d 1, 8 (Pa. 2005). Similarly, *ejusdem generis* ("of the same kind or class"), dictates that when a list of two or more specific descriptors is followed by a more general descriptor, the otherwise wide meaning of the general descriptor must be restricted to the same general class of the specific descriptors that preceded it. BLACK'S LAW DICTIONARY, 556 (8th ed. 2004); *Tech One Associates v. Bd. of Prop. Assessment, Appeals & Review of Allegheny County*, 53 A.3d 685, 697 (Pa. 2012).

The vast majority of the conditions in section 9763(b) are not punitive in nature, although some may have ancillary punitive effects. In the broadest sense, the first three conditions all benefit the family of the defendant and make him or her more accountable to his or her community, and the tenth condition benefits the victim of the crime. The fourth, fifth, sixth, seventh, and fourteenth conditions provide for rehabilitation through

consultation with professionals, and the eighth, ninth, eleventh and twelfth conditions all aim to prevent the defendant from committing additional crimes. Only the thirteenth, sixteenth, and seventeenth conditions are purely punitive in nature, providing the sentencing court with the authority to impose fines or to impose lesser alternatives to total confinement.

In interpreting the permissible scope of the conditions that may be imposed under subsection 9763(b)(15) as "things reasonably related to rehabilitation," we begin by concluding that the requirement that Orie Melvin send letters of apology to both her former staff and the members of the judiciary is a permissible condition under subsection 9763(b)(15). Much like the condition of restitution or reparations for the loss or damage caused by the crime, as permitted by subsection 9763(b)(10), these letters of apology force Orie Melvin to acknowledge the harm caused by her crimes. This condition is also is reasonably tailored to Orie Melvin's rehabilitation, as it may force her to accept responsibility for the harm she caused and, as such, is consistent with the goals of rehabilitation. **See Hall**, 80 A.3d at 1215 (identifying the goals of rehabilitation as "recognition of wrongdoing, deterrence of future criminal conduct, and encouragement of future law-abiding conduct").

We turn to the condition imposed by the trial court that Orie Melvin write the apology letters to the members of the judiciary on photographs while posed in handcuffs. The certified record reflects that this condition

was not imposed to promote her rehabilitation, but rather merely to shame and humiliate her in the eyes of her former colleagues in the judiciary. The trial court unquestionably staged the photograph for maximum effect. At the time it was taken (immediately after sentencing), Orie Melvin was no longer in police custody and was otherwise free to go home to begin house arrest. She was not in restraints at that time, and the trial court directed that she be placed in handcuffs only to take the photograph. N.T., 5/7/2013, at 66 ("This is the picture. Put handcuffs on her."). The trial court's use of the handcuffs as a prop is emblematic of the intent to humiliate Orie Melvin in the eyes of her former judicial colleagues.

Our conclusion that the trial court's decision to force Orie Melvin to write apology letters on the degrading photograph was solely intended to shame her is further buttressed by the fact that it did not require her to do so for the apology letters to those most directly affected by Orie Melvin's wrongdoing, namely the members of her judicial staff required to do political work and risk their jobs in the process. Instead, the trial court only ordered the use of the highly embarrassing photograph for the apology letters to the far broader and more dispersed group of recipients (members of the judiciary). As such, this condition was imposed solely for the purpose of humiliating and shaming her.

In no sense can this unorthodox gimmick be construed as legitimately intended for her rehabilitation, but rather as another form of punitive

sanction for her crimes – not one authorized under the Sentencing Code. In this regard, we emphasize that the only catchall condition in section 9763(b) is its subsection (15), which authorizes "things reasonably related to rehabilitation." 42 Pa.C.S.A. § 9763(b)(15). The statute does not authorize forms of punishment other than those specifically enumerated. While a defendant may conceivably (or idiosyncratically) experience some degree of shame from any of the section 9763(b) conditions, inflicting shame or humiliation on the defendant is not the primary purpose of any of the specifically defined conditions. Applying *noscitur a sociis* and *ejusdem generis* in this context, we must conclude that while a sentencing court has wide latitude under subsection 9763(b)(15) to design conditions to assist in efforts at rehabilitation, no condition may be imposed for the sole purpose of shaming or humiliating the defendant. Nothing in section 9763(b), or for that matter, anywhere else in the Sentencing Code, provides (or even suggests) that shaming or humiliating a defendant is consistent with either penological policies of this Commonwealth in general or the goals of rehabilitation in particular.

In this regard, we note that the highest courts in at least five sister states have reached similar conclusions, namely that shaming is not reasonably related to rehabilitation and may in many circumstances overshadow any possible rehabilitative effects that the punishment might otherwise provide. ***See, e.g.***, ***State v. Schad***, 206 P.3d 22, 35 (Kansas

2009); ***State v. Mohammad***, 43 P.3d 318, 325 (Montana 2002); ***People v. Meyer***, 680 N.E.2d 315, 318-19 (Illinois 1997); ***State v. Burdin***, 924 S.W.2d 82, 87 (Tenn. 1996); ***People v. Letterlough***, 655 N.E.2d 146, 148-49 (N.Y. 1995); ***but see United States v. Genentera***, 379 F.3d 596, 607 (9th Cir. 2004).

The broad discretion under subsection 9763(b)(15) to fashion creative conditions to county intermediate punishment to promote efforts at rehabilitation does not extend to permit drastic departures from the sentencing concepts reflected in our Sentencing Code. The decision to permit shaming sentences, if determined to be appropriate, is best left to the realm of our legislature employing its usual safeguards of legislative study and debate. At present, however, conditions on criminal sentences designed solely to shame and humiliate the defendant are not expressly or implicitly authorized by statute, and thus such conditions are illegal and subject to correction.

Because the trial court exceeded its statutory authority in requiring Orie Melvin to write apology letters to the state's judges on a photograph of herself in handcuffs, this condition of Orie Melvin's sentence of county intermediate punishment is hereby stricken as illegal. As ordered by the trial court, Orie Melvin will be required to write letters of apology both to the members of her judicial staff and to every judge in Pennsylvania, but such apology letters do not need be written on the photograph of Orie

Melvin in handcuffs. This Court has the authority to correct an illegal sentence directly rather than to remand the case for re-sentencing so long as we do not disrupt the trial court's sentencing scheme in doing so. *See, e.g.*, *Commonwealth v. Williams*, 997 A.2d 1205, 1210 (Pa. Super. 2010); *Commonwealth v. Dobbs*, 682 A.2d 388, 392 (Pa. Super. 1996); *Commonwealth v. Vazquez*, 476 A.2d 466 (Pa. Super. 1984). Here, we conclude that this amendment to the trial court's sentence does not disrupt the sentencing scheme. During sentencing, the trial court made clear that the apology letters were necessary to address Orie Melvin's refusal to accept responsibility for her crimes:

> I don't believe that [Orie Melvin] is an evil person. I've never believed that. I mean, you watch television, you see really, really evil people. I don't believe she is evil. But I do believe her arrogance is stunning. Her arrogance is stunning.
>
> She is a person of privilege and, unfortunately, she believes she can pick and choose what rules she wishes to follow, and which are inconvenient and can be ignored.
>
> Truth be told, I honestly believe that in your heart of hearts, you don't think you did anything wrong. Which is more of a pity. You have consistently refused to accept any responsibility for any of the harm you have done to the people who worked with you, the electoral process, to your colleagues in the Judiciary, and most of all your family. It's real simple to say that just she violated the law. She ruined an awful lot of people. The victims of her crime [are] enormous. This was not a single error in judgment. This went on for an awfully long period of time. Two elections.

*    *    *

> The defendant has left a trail of victims. Unbelievable. Your sister's staff, your staff, you made them do things that you knew jeopardized their jobs and their livelihoods. You brought shame to the Judiciary. There are 500, at least 500 members of the Judiciary who have been tarnished by your behavior.

N.T., 5/7/2013, at 49, 51.

In our view, the trial court's requirement that Orie Melvin write letters of apology to her judicial staff and to every judge in Pennsylvania directly addresses the trial court's intent to rehabilitate her by requiring her to acknowledge her wrongdoing. Because our amendment of the sentence does not disrupt the trial court's overall sentencing scheme, including its efforts to have Orie Melvin accept responsibility for her crimes and their impact, remand for resentencing is unnecessary.

### 3. Written Sentencing Order

Finally, we reject Orie Melvin's contention that the requirement that she write apology letters is not a part of her sentence because it was not included in the written sentencing order. As explained hereinabove, the certified record on appeal reflects that the requirement of writing letters of apology was expressly set forth in a written Amended Order of Sentence and again later in a Corrected Amended Order of Sentence. *See supra* at 5. Accordingly, ***Commonwealth v. Foster***, 324 A.2d 538 (Pa. Super.

1974), and its progeny have no application here. *Id.* at 539 ("Oral statements made by the judge in passing sentence, but not incorporated in the written sentence signed by [the sentencing judge], are not part of the judgment of sentence."); *Commonwealth v. Willis*, 68 A.3d 997, 1010 (Pa. Super. 2013) ("It is well settled that, where there is a discrepancy between the sentence as written and orally pronounced, the written sentence generally controls.").

## II. *Sua Sponte* Stay of Sentencing During Pendency of Appeal

We turn to Orie Melvin's appeal at 1974 WDA 2013 from the trial court's *sua sponte* order dated November 15, 2013 staying her criminal sentence in its entirety. For her first issue in this appeal, Orie Melvin insists that the trial court lacked jurisdiction and authority to *sua sponte* suspend Orie Melvin's sentence while her direct appeal was pending in this Court. We agree and reverse the trial court's November 15, 2013 order staying Orie Melvin's sentence.

In *Commonwealth v. Quinlan*, 639 A.2d 1235 (Pa. Super. 1994), *appeal dismissed*, 675 A.2d 711 (Pa. 1996), this Court set forth the general rules with respect to a trial court's jurisdiction over its orders after an appeal has been taken.

> Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken. 42 Pa.C.S.A. § 5505. Generally, once the thirty-day period is over, the trial court loses the power to alter its orders. Also, when an

> appeal is taken, the trial court has no jurisdiction to modify its sentence. Pa. R.A.P. 1701(a).

*Id.* at 1238 (case citations omitted); *see also Commonwealth v. Walters*, 814 A.2d 253, 255 (Pa. Super. 2002), *appeal denied*, 831 A.2d 599 (Pa. 2003).

Based upon this general rule, the trial court had no jurisdiction to enter a stay of its sentencing order.[34] In its opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, however, the trial court explained it acted in accordance with appellate Rule 1701(b)(1), which provides trial courts with limited exceptions from the general rule to, *inter alia*, preserve the *status quo* during the pendency of an appeal. The trial court stated:

> Pursuant to Pa. R.A.P. 1701(b)(1), the trial court is authorized to grant supersedeas after an appeal is taken. Pa. R.A.P. 1701(b)(1) states as follows:
>
> > (b) Authority of a trial court or agency after appeal. After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

---

[34] The 30-day period for modifications under 42 Pa.C.S.A. § 5505 expired well before the trial court entered its November 15, 2013 stay order. While this Court has recognized an exception to section 5505's 30-day period for modifications to correct clerical or other formal errors clear on the face of the record and which do not require an exercise of discretion, **ISN Bank v. Rajaratnam**, 83 A.3d 170, 172-73 (Pa. Super. 2013) (citing **Stockton v. Stockton**, 698 A.2d 1334, 1337 n.3 (Pa. Super. 1997)), that exception is not at issue here.

> (1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

This [c]ourt has attempted to make it clear that the sentence imposed on May 14, 2013, was an entire sentencing scheme. (HT at 4). The conditions imposed on the sentence of intermediate punishment were all essential to the sentencing scheme. The sentencing conditions were imposed pursuant to 42 Pa.C.S.A. §9763(b)(15) and are required by the sentence.

[Orie Melvin] cannot select the parts of her sentence that she wants to serve, and the parts that she doesn't want to serve. This court imposed a sentence with multiple conditions, each of which was an essential component of the sentencing scheme.

The Superior Court granted stay of the conditions imposed on house arrest requiring [Orie Melvin] to write apology letters to [Orie Melvin's] staff and send a photograph with a short apology written thereon to the Pennsylvania judiciary. This [c]ourt's sentence cannot be bifurcated. The sentence imposed on May 14, 2013, was an entire sentencing scheme. The conditions are integral to the sentence of house arrest. [Orie Melvin] stopped serving this Court's sentence when the Superior Court stayed the apology requirement. Therefore, this [c]ourt stayed the entire sentence to preserve the status quo. This [c]ourt properly granted supersedeas of the entire sentence in the instant matter, pursuant to Pa.R.A.P. 1701(b)(1).

Trial Court Opinion, 3/24/2014, at 3-5.

A supersedeas order "is an auxiliary process designed to supersede or hold in abeyance the enforcement of the judgment of an inferior tribunal." ***Goodstein v. Goodstein***, 619 A.2d 703, 706 (Pa. Super. 1992) (quoting ***Young J. Lee, Inc. v. Com., Dept. of Revenue***, 474 A.2d 266 (Pa. 1983)), *appeal dismissed*, 639 A.2d 1180 (Pa. 1994). Because the trial court's November 15, 2013 order suspended its own sentencing order, rather than the "judgment of an inferior tribunal," we question whether said order is properly designated as a "supersedeas." We need not decide this question, however, since whether the November 15, 2013 order was a "supersedeas" or merely a stay to preserve the status quo, the trial court lacked any jurisdiction to enter it for at least two reasons. First, the trial court's order did not preserve, but rather disrupted, the *status quo*. At the time of its entry, Orie Melvin was serving her sentence of house arrest and complying with all of the conditions of said sentence with the exception of the requirement to write apology letters, which condition this Court stayed on November 6, 2013 during the pendency of her direct appeal. The trial court's order altered the *status quo*.

Second, and more importantly, in its November 6, 2013 opinion granting the stay of the apology letters requirement, this Court expressly rejected any contention that its stay either disrupted the trial court's

sentencing scheme or provided any basis for the trial court to revisit or modify its sentencing order at that time.

> In its Response to Application for Stay, the Commonwealth requests that if this Court grants the stay, the case should be immediately remanded to the trial court for resentencing because the 'entire sentencing scheme has been disrupted.' We decline to do so for two reasons. First, the Commonwealth cites to no rule or other authority that would permit us to remand the case to the trial court at this time, even if we were otherwise inclined to do so. Second, and more importantly, the grant of the Application for Stay does not disrupt the trial court's sentencing scheme. Instead, it only stays a portion of the sentencing order pending resolution by this Court of constitutional and statutory arguments regarding its legality. The appropriate audience for the Commonwealth's argument is the merits panel of this Court. If it determines that the requirement that Orie Melvin write and send apology letters is illegal, and that eliminating the requirement disrupts the sentencing scheme, the case will be remanded to the trial court for resentencing (including, if appropriate, a term of incarceration). At this juncture, we do no more than postpone the performance of this part of the sentence until Orie Melvin's direct appeal is decided.

*Melvin*, 79 A.3d at 1204-05.

On appeal, Orie Melvin contends that the trial court entered its *sua sponte* order staying the entire sentence "in defiance of this Court's ruling on November 6, 2013." Orie Melvin's Brief at 25. We agree. We note that in its appellate brief, the Commonwealth also agreed, indicating that "a panel of this Court refused to give Judge Nauhaus the opportunity to stay

the entire sentence, explicitly rejecting the argument that the stay of the apology letters would disrupt the sentencing scheme." Commonwealth's Brief at 14. At oral argument of this appeal on May 30, 2014, the Commonwealth declined to support the trial court's contention that it had any jurisdiction to enter the November 15, 2013 stay order.[35]

### III. CONCLUSION

On the appeal at 844 WDA 2013, we affirm the judgment of sentence after modification of the sentence as described in detail hereinabove. As ordered by the trial court, Orie Melvin will be required to write letters of apology to the members of her judicial staff and to every judge in Pennsylvania, but no apology letter need be written on photographs of herself in handcuffs.

On the appeal at 1974 WDA 2013, we reverse the trial court's order staying Orie Melvin's criminal sentence and reinstate the sentence set forth in the written sentencing order dated May 7, 2013 except that the condition that the letters of apology to members of the Pennsylvania Judiciary be written on a photograph of Orie Melvin in handcuffs is eliminated.

Jurisdiction relinquished.

---

[35] In light of our disposition of Orie Melvin's first issue in the appeal at 1974 WDA 2013, it is unnecessary to address her second issue on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2014